17595

Jesse R. BOLIN, Respondent, v. William N. BOSTIC, doing business as Southern Sewing Center, and Bruce L. Phipps, Defendants, of whom William N. Bostic, doing business as Southern Sewing Center is Appellant

(111 S. E. (2d) 557)

*Messrs. J. Roy Berry, W. Ray Berry* and *Melton Klig-man,* of Columbia, *for Appellant,*

*Messrs. E. Ellison Walker, Julius W. McKay* and *Mc-Kay, McKay, Black & Walker,* of Columbia, *for Respondent,*

December 15, 1959.

OXNER, Justice.

This action was brought to recover damages to plaintiff's automobile resulting from a collision with another automobile owned and driven by defendant Bruce L. Phipps which occurred around eight o'clock on the morning of November 7, 1957. William N. Bostic, doing business as Southern Sewing Center, was joined as a co-defendant under the doctrine of *respondeat superior*. Phipps failed to answer and was adjudged in default. The trial resulted in a verdict for plaintiff against both defendants for $523.50. From the judgment entered thereon, Bostic has appealed.

The only exception we need consider is that which charges error on the part of the trial Judge in refusing appellant's motion for a directed verdict upon the grounds (1) that Phipps was an independent contractor and not his agent, and (2) that even if found to be an agent, Phipps was not acting within the scope of his agency or employment at the time of the accident.

The undisputed facts are: Appellant was engaged in the business of selling new and used sewing machines with his office on Blossom Street in the City of Columbia and territory extending throughout the State. About three weeks prior to the accident Phipps was employed as a salesman. During the first week he worked on a small salary at appellant's place of business where he was taught how to operate and demonstrate a sewing machine. After this training period, he was given a catalog and calling cards and went to work as a salesman on a commission basis with no fixed territory or hours of employment. He furnished his own car in which he carried a "demonstrator" and paid his own trav-

eling expenses, with no allowance for mileage or upkeep. He was at liberty to solicit business at any place or at any time within the State. The only requirement imposed by appellant was that before commencing work each morning, Phipps, and all other salesmen were to report at his place of business at 8:00 o'clock. Phipps never made a sale prior to the accident. Had he done so, he would have collected the down payment, and income taxes would have been withheld and Social Security payments deducted from his compensation.

On the morning of the accident, Phipps left his home in West Columbia for the purpose of reporting at appellant's office. The collision occurred as he crossed the Blossom Street bridge. After the accident the sewing machine in the car was turned over to another one of appellant's salesmen and Phipps never returned to work.

We need not decide whether Phipps was an agent or independent contractor. Assuming that the relationship between Bostic and him was that of principal and agent or master and servant, the testimony conclusively shows that he was not acting within the scope of his agency or employment at the time of the accident.

It is well settled that "the liability of the master for the torts of his servant arises only when the servant is acting about the master's business, within the scope of his employment; if he is upon his own business acting outside of his employment the master is not liable." *McFadden v. Anderson Motor Co.,* 121 S. C. 407, 114 S. E. 402. We have said that "an act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and is in furtherance of the master's business." *Adams v. South Carolina Power Co.,* 200 S. C. 438, 21 S. E. (2d) 17, 19. These general principles govern in determining whether an employer is liable for the negligence of his agent or servant in driving an automobile. *Holder v. Haynes,* 193 S. C. 176, 7 S. E. (2d) 833. Our decisions are also uniformly to the effect

that the mere fact that the employee uses his own motor vehicle does not relieve the employer from liability for negligence in driving the vehicle. If with the express or implied assent of the employer, such automobile is used by the employee in the discharge of his duties, the employer will be liable for any damage caused by his negligence while acting within the scope of his employment. *Stevens v. Moore,* 211 S. C. 498, 46 S. E. (2d) 73; *Gillespie v. Ford,* 225 S. C. 104, 81 S. E. (2d) 44.

While we have had occasion from time to time to discuss the liability of an employer for workmen's compensation for injuries sustained by an employee while going to or returning from work, we have not, so far as our investigation discloses, had directly before us the question of the common law liability of an employer for damage or injury to a third party resulting from the negligence of an employee while driving his own automobile to and from work. In *Lewis v. Trawick,* 234 S. C. 415, 108 S. E. (2d) 680, we indicated that an employee was acting within the scope of his employment while driving his employer's truck in transporting other employees to work. There the employer had assumed the obligation to transport the employees to work, if they desired it, and furnished a truck and driver for that purpose. That case involved such a different factual situation as to be of little or no value in deciding the question presented in the instant case.

The general rule elsewhere is that an employee using an automobile in going to and from his place of work is not at such times regarded as engaged in work for his master but as acting solely for own purposes. In Blashfield, Cyc. of Automobile Law and Practice, Permanent Edition, Volume 5, Section 3041, it is stated:

"In the absence of special and peculiar facts and circumstances affecting the relationship of the parties and the purposes to be served, as a general proposition, the servant in going to and from his work in an automobile, acts only for

his own purposes, and not for those of his employer, and consequently the employer is not to be held liable for an injury occasioned while the automobile was being so used. "For example, where an employee works for another at a given place of employment, and lives at home or boards himself, it is the business of the employee to present himself at the place of employment, and the relation of master and servant does not exist while he is going between his home and his place of employment."

An exhaustive review of the decisions will be found in an annotation in 52 A. L. R. 2d, commencing on page 350. On page 354 the annotator concludes:

"The great majority of the cases dealing with the problem have taken the view that getting to the place of work is ordinarily a personal problem of the employee and not a part of his services to his master, so that in the absence of some special benefit to the master other than the mere making of the services available at the place where they are needed, the employee is not acting in the scope of his employment in traveling to work, even though he uses his employer's motor vehicle to do so, and therefore the employer cannot ordinarily be held liable to one injured by the employee's negligent operation of the vehicle on such a trip."

There are no special circumstances bringing this case within any of the exceptions to the general rule above stated. Appellant was not interested in the means of transportation used by Phipps in going to work. His sole interest was that he report for duty at eight o'clock in the morning. Phipps selected his own means of transportation, traveled at his own expense and in his own car, and at the time of the accident was acting in furtherance of his own purpose.

It is suggested that Phipps had no fixed hours of employment, was not required to work at any particular place and on the morning of the accident could have stopped at any moment to transact business. But the following undisputed

testimony by appellant shows that the parties never contemplated that Phipps should go into the field before reporting for work:

"Q. Mr. Bostic, was he (Phipps) required to keep any definite hours? A. He was required to report in the office in the morning at eight o'clock. Each man is before he goes to work.

"Q. What time do they get off from work? A. They're strictly on commission and we don't have a designated time for them to get off work.

"Q. In other words, he could sell to a customer as late as ten, eleven or twelve o'clock at night if he were so inclined? A. That's right, sir.

"Q. Of course there is nothing to prevent him from selling a customer before he gets to work, is there? A. He reports to work before he goes on call in the morning.

"Q. Mr. Bostic, was there any requirement that he could not sell someone at seven o'clock in the morning? A. The requirement is that he comes directly to work at eight o'clock in the morning.

"Q. Now Mr. Bostic, let's be fair about this. Now you mean to tell me that if one of your salesmen had a sale at seven o'clock in the morning, you would tell him not to make the sale? A. We didn't discuss it, sir, not to make one or to make one."

In addition to the foregoing, the undisputed testimony shows that on the morning of the accident Phipps had no intention of transacting any business on his way to work.

Respondent relies on *Gillespie v. Ford, supra,* 225 S. C. 104, 81 S. E. (2d) 44, but in that case the agent had commenced work and at the time of the accident was actually engaged in the discharge of his duties.

We think the Court erred in refusing appellant's motion for a directed verdict. It is unnecessary to pass upon the other exceptions.

Judgment reversed and case remanded for entry of judgment in favor of appellant under Rule 27.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.