18220

Mildred J. LANE, Respondent, v. MODERN MUSIC, INC., Appellant

(136 S. E. (2d) 713)

Messrs. *Willcox, Hardee, Houck, Palmer & O'Farrell,* of Florence, *for Appellant,*

*Messrs. Herbert Britt* and *William J. McLeod,* of Dillon,
*for Respondent,*

June 1, 1964.

Moss, Justice.

Mildred J. Lane, the respondent herein, instituted this action to recover damages for personal injuries alleged to have been sustained by her on December 16, 1957, as a proximate result of the negligent, willful, wanton and malicious acts of Modern Music, Inc., the appellant herein, committed by one W. B. Powell, its agent, servant or employee, while acting in the scope of his employment. A general denial was interposed by the appellant.

This case came on for trial before the Honorable T. B. Greneker, Presiding Judge, and a jury, at the 1962 February term of the Court of Common Pleas for Dillon County. At appropriate stages of the trial, the appellant moved for a nonsuit and a directed verdict upon the ground that Powell was not acting within the scope of his agency or employment in committing the acts which resulted in injury to the respondent. These motions were refused and the case was submitted to the jury, resulting in a verdict in favor of the respondent for actual damages. After the verdict was returned, appellant moved for judgment *non obstante veredicto,* or failing in that, for a new trial upon the same ground as was

incorporated in the motions for a nonsuit and a directed verdict. The motion was refused and this appeal followed.

The only exception we need consider is that which charges error on the part of the Trial Judge in refusing appellant's motion for a directed verdict upon the ground that Powell was not acting within the scope of his employment in doing the acts which resulted in injury to the respondent.

The appellant owns about two hundred coin operated piccolos. These machines are placed on locations in restaurants and other public places to be played by members of the public. This operation is carried on in some ten counties in the eastern part of this State. The appellant has six or seven employees who service these piccolos. This service includes the placing of piccolos on location, making necessary repairs to them, changing the records and removing from the coin box of said machines the money deposited therein by customers playing such piccolos. An employee of the appellant was furnished a pickup truck to carry on the aforesaid work.

The testimony shows that one of the piccolos owned by the appellant was located in Carter's Cafe in the Town of Dillon, South Carolina, and such piccolo was serviced by W. B. Powell, an employee of the appellant.

The respondent, an insurance agent, testified that on December 16, 1957, she went into Carter's Cafe to talk with W. B. Lester, the manager thereof, about insurance, and while there she had a sandwich and a chocolate milk shake. While the respondent was so engaged, W. B. Powell and B. D. McCall, employees of the appellant, came into said cafe and discussed with Lester if he needed any records for the piccolo. A request was made for the record "White Christmas". Powell informed Lester that he did not have such record but would bring it on the next trip. Both of the employees walked over to the piccolo and Powell had a bunch of keys in his hand but they did not change the records on said machine. After about fifteen minutes Powell went back

to the pickup truck he was driving and then came back to the door of the cafe and said to Lester, "I want to show you my snake killer." After the respondent finished eating she started down the steps from the cafe to the street and Powell had placed on the street what the respondent described as a cage approximately two feet long and a foot high, one-half of the top being covered with wire and the other half being solid, and on which was painted the words, "Snake Killer", "Danger", "Mongoose". She further testified that she observed the cage and saw a furry tail therein. It is agreed that as the respondent came out of the cafe and while she was in front of or near the cage, Powell tripped the mechanism, throwing what appeared to be a mongoose from the cage in the direction of the respondent. She testified that in trying to get away she stumbled and fell flat on her back, with resulting injuries.

W. B. Lester, the manager of the cafe, testified that the respondent was in the cafe, ate a sandwich, had something to drink, and discussed insurance with him. While the respondent was in the cafe Powell and McCall came in and stayed about ten minutes. When Powell got ready to go, he stepped to the door and asked him to step outside because he had something to show him. When Lester went outside, he saw the cage, which has heretofore been described, sitting about midway between the street and the steps to the cafe. Lester stated that Powell wanted him to get in front of the cage but he stepped over to one side of it. He testified that Powell beat on the box a little bit and walked around it and tried to get him to beat on it. Lester further testified that the respondent came out of the cafe at that time and that Powell must have beat on the cage another minute or two. He says that the respondent was on one side of the box and he was on the other side. He testified that the respondent was looking at the box and Powell beat on it a little more and turned the "mongoose" loose and it came out one end of the box and went between the witness and the respondtnt. He said this scared the respondent and that she went backwards,

stumbled and fell. He described the mongoose that came out of the box as "some kind of an animal tail with a ball tied on the end of it."

B. D. McCall, an employee of the appellant, testified that he and Powell were "about equal" in their work. Their jobs consisted of going around to the various locations where appellant had placed piccolos, taking up the money in them and changing the records from time to time. According to this witness, the appellant provided a truck for them. He further testified that on the day in question that he and Powell had checked the piccolo at Carter's Cafe earlier on that day and they had already finished checking their route when they stopped back by the cafe to get a coca-cola and "shoot the breeze with W. B." Lester. He stated that the "trick mongoose" belonged to Powell and had been given to him by a friend and was not provided by the appellant, and that Powell had had the mongoose a couple of days, and as far as he knew the appellant did not know that Powell had this device in his possession. It was not shown to all the customers but to "just our good friends who could take a joke." He said that the appellant had five, six or seven other salesmen and none of them were provided with such a device by the appellant. This witness confirmed what took place with reference to the release of the "mongoose" by Powell from the cage.

At the time of the trial of this case W. B. Powell was not available as a witness. The record shows that he was no longer in the employ of the appellant and had moved from Dillon to some place unknown to the witnesses who did testify.

It is the position of the respondent that the appellant is legally responsible to her for the negligent, willful and wanton acts of its servants.

> The doctrine of *respondeat superior* rests upon the relation of master and servant. A plaintiff seeking recovery from the master for injuries must establish

that the relationship existed at the time of the injuries, and also that the servant was then about his master's business and acting within the scope of his employment.

It is well settled that the liability of the master for the torts of his servant arises only when the servant is acting about the master's business, within the scope of his employment; if he is upon his own business acting outside of his employment the master is not liable. An act is within the scope of a servant's employment where reasonably necessary to, accomplish the purpose of his employment and is in furtherance of the master's business. These general principles govern in determining whether an employer is liable for the acts of his servant. *Bolin v. Bostic,* 235 S. C. 319, 111 S. E. (2d) 557.

The act of a servant done to effect some independent purpose of his own and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of his employment so as to render the master liable therefor. Under these circumstances the servant alone is liable for the injuries inflicted. If a servant steps aside from the master's business for some purpose wholly disconnected with his employment, the relation of master and servant is temporarily suspended; and this is so no matter how short the time, and the master is not liable for his acts during such time. *Hancock v. Aiken Mills,* 180 S. C. 93, 185 S. E. 188; *Hyde v. Southern Grocery Stores,* 197 S. C. 263, 15 S. E. (2d) 353.

As is heretofore stated, the only duties of Powell as a servant of the appellant was to place piccolos on locations, make necessary repairs to them, change the records when necessary, and to collect from the coin box of the piccolos money deposited therein by customers. There is a complete absence of any evidence from which an inference can be drawn that the aforesaid mischievous acts of Powell had any connection whatsoever with his duties concerning

his master's business. It was not necessary for Powell to engage in the acts which inflicted injury upon the respondent to accomplish the purpose of his employment. There is absolutely no proof that the master knew that Powell had in his possession, or authorized the use of the "mongoose" device with which he frightened people. The only reasonable inference from the testimony is that Powell used the aforesaid mongoose device for his personal or private amusement and to effect an independent purpose of his own. Certainly, it was not used in furtherance of the master's business.

The general rule is that an employer is not liable to a customer, patron or other person for an assault arising out of acts of mischief or horseplay indulged in by the employee unless it is shown that the employer was or should have been so aware of the propensities of the employee in that direction as to make him negligent for having retained him in the employ, since such acts are not to be considered incidental to the work which he is hired to perform but are of a personal nature, indulged in for the personal amusement of the employee and not in furtherance of the master's interest.

If the servant does a mischievous act merely to frighten or perpetrate a joke on a third person, and the act is entirely disconnected from the purpose of employment, the master generally is not liable therefor. 57 C. J. S., Master and Servant, § 574(c) page 327.

In *Sullivan v. Crowley*, 307 Mass. 189, 29 N. E. (2d) 769, known as the "hot foot" case, it appears that the plaintiff entered the defendant's tavern, purchased a glass of beer, sat down at a table, drank it, and after a few more beers dozed off to sleep, when the bartender in charge of the premises, with another patron of the tavern, gathered some papers, placed them under the foot of the sleeping patron, and started a fire which caused him injury, a finding that the acts of the bartender had any connection with the work he was hired to do was not warranted, the Court held that in

playing the prank which led to the injury of the plaintiff, the bartender was not acting in the interest of or for the benefit of his employer, but for a purpose of his own, and that since he was not acting within the scope of his employment the defendant was not liable for the consequences of his act.

In *Terrett v. Wray*, 171 Tenn. 448, 105 S. W. (2d) 93, it is stated that "[e]xtraordinary, extreme, or prankish acts rarely can be attributed to the master as means or methods of carrying out an ordinary employment."

In *Thomas-Kincannon-Elkin Drug Company v. Hendrix*, 175 Miss. 767, 168 So. 287, where a retail druggist had an arrangement with Western Union Telegraph Company by which the latter company delivered packages for the drug store through its messenger boys was held not liable for the acts of one of its clerks who called a messenger boy to the counter and offered him a malted milk in which he had mixed a laxative, the messenger boy being at the store in answer to a call to make a delivery, since the act of the clerk in administering the laxative was not within the scope of his employment, or in furtherance of the master's business, but solely for a purpose of his own, and the mere fact that for the accomplishment of that purpose he used facilities supplied him by the employer was not controlling as to the latter's liability.

We conclude that the motion of the appellant for a directed verdict should have been granted because Powell was not acting within the scope of his employment at the time he committed the prankish and mischievous acts resulting in injury to the respondent.

Reversed and remanded for entry of judgment in favor of the appellant.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.