20377

AMERICAN MUTUAL FIRE INSURANCE COMPANY, Appellant,
v. RELIANCE INSURANCE COMPANY et al., Respondents.

(233 S. E. (2d) 114)

*J. Boone Aiken, III, Esq.,* of *Wright, Scott, Blackwell & Powers, Florence, for Appellant,*

*S. Norwood, Gasque,* of *Gasque & Greene, Latta, for Respondents,*

March 9, 1977.

LITTLEJOHN, Justice:

This declaratory judgment action was brought pursuant to § 10-2001, *et seq.,* Code of Laws of South Carolina, (1962), by American Mutual Fire Insurance Company (American), for the purpose of having the court determine whether its policy of automobile liability insurance extended coverage to Michael E. Lupo, who was operating the insured

Mustang vehicle at the time of a collision on September 11, 1971. The defendants are two persons injured in the collision, the administrator of the estate of one person killed in the collision, and two other insurance companies concerned with the outcome of the litigation.

The case was tried before the circuit judge without a jury. He held that the policy of American extended coverage to Lupo. American has appealed.

The basic issue before the lower court was whether Lupon had permission to operate the Mustang. It has been stipulated that the omnibus coverage afforded by the liability policy issued by American is limited to the coverage required by § 46-750.31, Code of Laws of South Carolina (1962), *as amended* (Supp. 1975), which includes as an insured ". . . . any person who uses with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies . . . ." Since this is an action at law, tried by the judge without a jury, we apply the rule set forth in *Townes Associates, Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976), to determine whether the evidence supports the conclusion that the Mustang was being driven by Lupo with permission. In such a case, the judge substitutes for a jury and if his findings are supported by a scintilla of evidence, his actions must be sustained.

The facts out of which the controversy arises are as follows:

Wilbur C. Cook (the named insured) bought the Mustang and gave it to his son, Kenneth Cook. It was titled and insured in the name of Wilbur, since Kenneth was a minor. The major reason for purchasing the car was to encourage Kenneth to remain working on the farm with his father, however, prior to the collision Kenneth had procured other employment but remained a part of his father's household. Wilbur paid for the insurance on the car and all but one or two installment payments which were made by Kenneth.

Wilbur testified that he, himself, and another son, Victor, had driven the Mustang, but that he had not seen any other person driving it. He said that he had never given Lupo permission to drive the car, but had never instructed Kenneth not to allow Lupo to drive it. We think it a fair summarization to say that Kenneth was given general and unrestricted use of the Mustang. Kenneth and Lupo were good teenage friends and spent a great deal of time together. Kenneth had permitted Lupo to drive the Mustang on numerous occasions, as Lupo's testimony reveals:

"Q. And would you state how often you drove it?

"A. Well, I drove it a lot and Kenny in there, and I had drove it a right smart when he weren't in there.

"Q. You had driven it when Kenny was not in the car?

"A. Yes, sir.

"Q. Did Kenny ever—did Kenny always tell you when you could or could not drive the automobile?

"A. Well, he told me, after we hung around a while, when I wanted to drive it, just go ahead and drive it."

In the late evening of September 10, 1971, Kenneth and Lupo were together at the Burger Family drive-in at Dillon. Gary Wayne Hopkins was also there, using the car of his brother, Jack, who worked at DuPlan, a local industry. Jack was to get off work at 12 o'clock midnight, and Gary was to meet him for the purpose of providing him transportation. Kenneth agreed to go with Gary in Jack's automobile. Lupo and Timothy Grantham remained at the drive-in. Lupo was sitting in the Mustang. The evidence is in conflict as to the conversation that took place between Kenneth and Lupo at the time Kenneth departed with Gary. It is the contention of Kenneth (for which there is some corroboration) that he left the keys in the Mustang with Lupo so that he could listen to the tape player and instructed him ". . . don't leave with my car because I don't know when I will be back, . . ."

There is also testimony on the part of Lupo that Kenneth told him ". . . if I went anywhere to be back within an hour."

The weight of Lupo's testimony is weakened by his failure of memory, but we are unable to say that it is completely without probative value and accordingly the judge was entitled to rely upon it.

After Kenneth and Gary had driven away, Lupo, accompanied by Timothy Grantham, drove away in the Mustang and collided with another vehicle some three miles away. There is no contention that Lupo was performing any service for either Wilbur or Kenneth at the time. They were following Joel Rene Berry home to leave his truck and bring him back.

Counsel for American argues that permission must flow from Wilbur, the named insured, to Lupo, the user of the Mustang, and that there is no evidence to support such permission, express or implied. Counsel also argues that the evidence does not support the inference that Kenneth gave permission, express or implied, to Lupo.

We must first decide if permission flowed from Wilbur such that Kenneth could grant permission to use to Lupo. In determining this question, the courts have ordinarily regarded the nature and scope of the permission granted to the first permittee (Kenneth). The express or implied permission of the named insured (Wilbur) to the use of the automobile by the original permittee (Kenneth) is, of course, a prerequisite to the protection of a second permittee (Lupo) under the omnibus clause. It appears well settled that the named insured's mere permission to another to use the automobile does not of itself authorize the first permittee to delegate his right of user to a third person so as to bring that third person within the coverage of the omnibus clause. It is equally well established, however, that the named insured's grant of authority to the original permittee to delegate to others need not be expressed, but may be implied from the broad scope of the initial permission or from the attending circumstances and the conduct of the parties, and a factual determination must be made in each case to determine

whether the scope of the initial grant was broad enough to include an implied authority to delegate to another and thus render the latter an additional insured. Implied authority or permission by the named insured, if established, is as effective to extend the coverage of the omnibus clause as that which is formally conferred.

In *St. Paul Fire & Marine Ins. Co. v. American Ins. Co.,* 251 S. C. 56, 159 S. E. (2d) 921 (1968), this Court affirmed the finding of the jury below that the driver of a certain automobile involved in an accident had impliedly been given permission to operate the vehicle by the named insured. This finding was supported, for the most part, by circumstantial evidence. We noted the important role of circumstantial evidence in establishing implied consent in situations, such as the present case, where direct evidence, for obvious reasons, is seldom available.

The issue is discussed in *Baesler v. Globe Indemnity Co.,* 33 N. J. 148, 162 A. (2d) 854 (1960) :

"Thus it is almost universally held in the modern cases that where the named insured grants his permittee broad and unfettered dominion over his insured automobile, he also impliedly authorizes his permittee to allow a third person to use it, and thus to render him an additional insured. *Costanzo v. Pennsylvania Threshermen, etc., Ins. Co., supra,* 30 N. J. 262, 152 A. (2d) 589; *National Grange Mut. Liability Co. v. Metroka, supra,* 250 F. (2d) 933 (3 Cir.) ; *Utica Mut. Ins. Co. v. Rollason, supra,* 246 F. (2d) 105 (4 Cir.) ; *Indiand Lumbermens Mut. Ins. Co. v. Janes,* 230 F. (2d) 500 (5 Cir. 1956) ; *Pennsylvania Thresherman, etc., Ins. Co. v. Crapet,* 199 F. (2d) 850 (5 Cir. 1952) ; *State Farm Mut. Auto Ins. Co. v. Porter,* 186 F. (2d) 834, 52 A. L. R. (2d) 499 (9 Cir. 1950), rehearing denied 186 F. (2d) 844 (9 Cir. 1951) ; *Robinson v. Fidelity & Cas. Co.,* 190 Va. 368, 57 S. E. (2d) 93 (1950) ; *Perrodin v. Thibodeaux,* 191 So. 148 (La. Ct. App. 1939). *Contra, Samuels v. American Automobile Ins. Co.,* 150 F. (2d) 221, 160 A. L. R. 1191 (10

Cir. 1945). The first permittee, by being granted complete dominion over the insured automobile, is put in the shoes of the named insured, and therefore his permittee is held to be the named insured's permittee. *Hinchey v. National Surety Co.,* 99 N. H. 373, 111 A. (2d) 827 (1955)."

An interesting and comprehensive discussion of the "Omnibus Clause-Consent" is to be found in 4 A. L. R. (3d) 10.

Our study of the testimony of both father, Wilbur, and son, Kenneth, convinces us that Kenneth's right to use the Mustang was about as unrestricted and unfettered as it could possibly be. Wilbur admits that he had never attempted to control the use of the car beyond granting permission to Kenneth to drive it. For all practical purposes, it was Kenneth's vehicle to use for an unlimited time. Accordingly, under the facts of this case, we are of the opinion that the factual finding of the lower court finds support in the evidence.

We now reach the second question: Does the evidence warrant the conclusion that Kenneth permitted Lupo to drive the Mustang? It is inescapable, and not denied, that Lupo had driven the car on numerous occasions, both when Kenneth was in the car and when he was not. As indicated hereinabove it was the testimony of Lupo that Kenneth had told him, ". . . when I wanted to drive it just go ahead and drive it." There is, of course, testimony which if believed would warrant the contrary conclusion, but we cannot say that the testimony is not susceptible of more than one reasonable inference. The trial judge had the right to believe one witness as against another, and if he disbelieved the testimony of Kenneth and believed the testimony of Lupo when he said that Kenneth told him to be back within an hour if he went anywhere, his findings would be warranted.

The appellant having failed to convince this Court that the evidence does not support the findings of the lower court on the two factual issues, it follows that the lower court is

Affirmed.

LEWIS, C. J., and NESS, RHODES and GREGOGY, JJ., concur.