**Alice Price HARRIS, as Executrix of the Estate of Mark Price Faulkenberry, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 82–1566.**

United States Court of Appeals,
Fourth Circuit.

Argued April 14, 1983.

Decided Oct. 4, 1983.

---

J. Wesley Drawdy, Columbia, S.C. (Drawdy & Dryer, Columbia, S.C., on brief), for appellant.

Jack L. Marshall, U.S. Atty., Columbia, S.C., for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and BRYAN, Senior Circuit Judge.

ERVIN, Circuit Judge:

In an action brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), the executrix of the estate of Mark P. Faulkenberry appeals from the grant of summary judgment in favor of the defendant United States. We affirm.

## I.

On August 6, 1975 at about 5:00 p.m., two civilian teenagers named Mark P. Faulkenberry and Randy T. Kirby were injured when their car ran off the road near Fort Jackson, South Carolina. According to the plaintiff's evidence, an officer named "Kemp" or "Camp" from Fort Jackson happened on the scene and stopped to aid the two youths.[1] Shortly thereafter, a car driven by Ronnie Norris appeared. Norris was a specialist fourth class in the Army Reserve on a non-resident training assignment at Fort Jackson. Prior to these events, Norris had performed his assigned military duties for the day and had returned to his temporary living quarters in a motel off the military reservation. When Norris came upon the accident, he and his girlfriend Lillie Lawhorn were on their way from

---

1. In this appeal from the granting of summary judgment in favor of the United States, we presume that the facts are as plaintiff states them, that a captain or major "Kemp" rendered aid to the boys at the scene of the accident, a fact which the government disputes. See Adickes v. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); 6 Moore's Federal Practice § 56.04[2].

their motel to a party on the Army base. They were traveling in Norris's private car and dressed in civilian clothes. According to Lawhorn, who was the plaintiff's principal witness at the summary judgment hearing, Norris was flagged down by the officer who had stopped to help the boys. The officer directed Norris to transport Kirby and Faulkenberry to a nearby hospital. The youths were helped into the back seat of Norris's car, and Norris took off at a high speed. Shortly after entering Fort Jackson, Norris lost control of his vehicle and skidded off the road into a tree, killing himself, Faulkenberry, and Kirby, and seriously injuring Lawhorn.

The executrices of Faulkenberry's and Kirby's estates filed a wrongful death action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2674.[2] They claimed that the negligence[3] of Norris was attributable to his employer, the United States, under the doctrine of *respondeat superior,* which generally holds that a master is strictly liable for the negligent acts of a servant acting within the scope of his or her employment. *Restatement (Second) of Agency* § 219(1) (1958). The government replied that Norris's negligence did not occur while he was acting within the scope of his employment in furtherance of his master's business. *See Bolin v. Bostic,* 235 S.C. 319, 111 S.E.2d 557 (1959). Therefore, the doctrine of *respondeat superior* did not apply.

Viewing the facts most favorably to the plaintiff, the district court found no evidence that Norris or Kemp were acting in the line of duty or carrying out the business of the United States when Norris took over from Kemp the care of Faulkenberry and Kirby. Summary judgment was therefore granted for the United States.[4]

## II.

The question for review is whether Norris and Kemp were acting within the scope of their employment when the accident occurred, thus permitting application of the doctrine of *respondeat superior.* In a suit under the Federal Tort Claims Act, this court must apply the law of agency of the place of the accident. *Cooner v. United States,* 276 F.2d 220, 223 (4th Cir.1960). *Lane v. Modern Music, Inc.,* 244 S.C. 299, 136 S.E.2d 713, 716 (1964), states the definitive South Carolina review of *respondeat superior* and scope of employment:

> The doctrine of *respondeat superior* rests upon the relation of master and servant. A plaintiff seeking recovery from the master for injuries must establish that the relationship existed at the time of the injuries, and also that the servant was then about his master's business and acting within the scope of his employment.
>
> It is well settled that the liability of the master for the torts of his servant arises only when the servant is acting about the master's business, within the scope of his employment; if he is upon his own business acting outside of his employment the master is not liable. An act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and is in furtherance of the master's business. These general principles govern in determining whether an employer is liable for the acts of his servant. . . .

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . .

---

**2.** 28 U.S.C. § 1346(b) states in pertinent part: [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 2674 reads in pertinent part:

**3.** That Norris acted negligently, proximately causing the death of Faulkenberry, is not disputed by the government on this appeal.

**4.** The executrix of Kirby's estate does not appeal.

The act of a servant done to effect some independent purpose of his own and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of his employment so as to render the master liable therefor. Under these circumstances the servant alone is liable for the injuries inflicted. If a servant steps aside from the master's business for some purpose wholly disconnected with his employment, the relation of master and servant is temporarily suspended; and this is so no matter how short the time, and the master is not liable for his acts during such time. . . .

(footnotes omitted).

By the authority of *Lane* we think it clear that Norris and Kemp were acting outside the scope of their employment during the time of the accident. Under *Lane,* Harris must prove that Norris and Kemp were "about [their] master's business" when the accident occurred. The facts before us bear no such inference. Kemp and Norris met off base while Norris was dressed in civilian attire and on his way in his private car to an informal camp social function. The object of Kemp's and Norris's efforts had absolutely no connection to their military responsibilities. *See United States v. Sharpe, et al.,* 189 F.2d 239 (4th Cir.1951) (United States not liable for the negligence of a soldier on leave traveling under orders in his own car to a new base); *United States v. Eleazer,* 177 F.2d 914 (4th Cir. 1949) *cert. denied,* 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333 (1950) (since soldier could have opted to travel in convoy vehicle rather than his own car, and since his orders merely required him to report to new quarters in Florida on a certain date, the Army was not responsible for the accident he caused); *Tucker v. United States,* 385 F.Supp. 717 (D.S.C.1974) (serviceman off post driving falsely procured Army vehicle

without authorization from military superiors was not acting within scope of employment when he crashed into plaintiffs). *Cf. Cooner v. United States,* 276 F.2d 220 (4th Cir.1960) (where negligent soldier was proceeding from one duty station to another on specific Army orders, traveling in own car, but not on leave or pass, he was acting within the scope of employment under New York law).

Furthermore, in the military context, acts within the scope of employment are acts carried out in the line of duty. *See* 28 U.S.C. § 2671. In *United States v. Dykes,* 6 M.J. 744 (1978), the United States Navy Court of Military Review considered the definition of "line of duty" in examining a military prosecution under 10 U.S.C. § 892.[5] Dykes had been disciplined by a court-martial for violating a general order prohibiting the possession of cigarette rolling paper. On appeal, he claimed that the general order deprived him of a personal liberty unrelated to the performance of his military duties and was therefore unlawful within the purview of 10 U.S.C. § 892. The court began with the premise that in order lawfully to impel compliance, a military order must itself be lawful. The court then held that the lawfulness of an order is inferred unless the order is contrary to the Constitution, the laws of the United States, or to some lawful superior order, or for some other reason is beyond the authority of the officer issuing it. Whether the issuance of a particular order is authorized is primarily to be determined by examining the circumstances under which the order was issued. Of prime importance in ascertaining whether an order is authorized is its relation to a "military duty." The term "military duty" encompasses both customary martial pursuits and also all activities reasonably necessary to safeguard the general morale, discipline and usefulness of military personnel. If an order is unrelated to a military duty,

---

**5.** 10 U.S.C. § 892 states in pertinent part:

Any [serviceman] who—
(1) violates or fails to obey any lawful general order or regulation [or]
(2) having knowledge of any other lawful order issued by a member of the armed

forces, which it is his duty to obey, fails to obey the order . . . ;
shall be punished as a court-martial may direct.

it is in all likelihood unlawful and need not be obeyed. The court ultimately found that the order banning cigarette papers was a reasonable restriction directed at preserving military discipline.

In *United States v. Robinson*, 6 C.M.A. 347 (1955), the Court of Military Appeals held that no officer shall use an enlisted man as a servant, *i.e.*, one who labors for the personal benefit of the officer. The test is whether services were to be performed in the capacity of a private servant to accomplish a private purpose, rather than in the capacity of a soldier to accomplish a military purpose.

Under the *Dykes* and *Robinson* analyses, Kemp's order to Norris was plainly unlawful as a military command. The order came while Norris was out of uniform and traveling in his personal car off the military base. Its subject was unrelated to military functions, and no military purpose was served by its issuance. Had Norris refused to obey Kemp's command, he could not have been court-martialed under 10 U.S.C. § 892.

■ Our reasoning can be summarized as follows: Kemp was under no military duty (or common law duty) to render aid to the injured boys.[6] He acted out of a personal humanitarian impulse wholly unrelated to his official duties as an employee of the United States. Had Kemp, while assisting the boys, committed negligence causing further injury, the United States would not have been liable because Kemp plainly was not acting within the scope of his employment in furtherance of government business. Since the United States could not be held liable for Kemp's negligence under these circumstances, it strains reason to argue that liability would accrue because of Norris's negligence, where Norris's involvement was again one step removed from Kemp's. The plaintiff tries to overcome our resistance by stressing that Kemp purported to exercise the official authority of his rank over SP4 Norris in directing Norris

to convey the boys to the hospital. What is more, Norris obeyed Kemp's "command."

Be that as it may, Kemp's order was unlawful, in our view, and the entire concert of activity between Norris and Kemp took place outside the scope of government service. The record is silent as to Kemp's military duties or assignment. There is nothing to suggest that he was performing any military responsibility or function at the time he stopped to aid the youths. The plaintiff has failed to demonstrate that an army officer is required by military law or regulations to stop on a public highway to render assistance to injured civilians. For these reasons, we conclude that the United States cannot be held liable for the negligence of Ronnie Norris which caused the death of Mark Faulkenberry.

III.

The grant of summary judgment in favor of the United States is affirmed.

AFFIRMED.

---

**6.** It is true, of course, that once Kemp intervened to assist the boys, he came under a duty to exercise reasonable care to secure their safety and not to leave them worse off than before

by discontinuing his aid. *Restatement (Second) of Torts* § 324 (1965). No pendent state tort claim is made against Kemp personally in this case.