443 S.E.2d 813 (1994)
GENERAL ACCIDENT INSURANCE COMPANY, Respondent-Appellant,
v.
SAFECO INSURANCE COMPANIES, Travelers Insurance Company, Reliance Insurance Company, Kent Lee Pullen, and Eleanor Nancy Gebolys, Defendants,
of Whom Safeco Insurance Company is, Respondent, and
Travelers Insurance Company is, Appellant-Respondent.
No. 2174.
Court of Appeals of South Carolina.
Heard March 9, 1994.
Decided April 25, 1994.
*815 M. Dawes Cooke, Jr. and Matthew H. Henrikson, of Barnwell, Whaley, Patterson & Helms, Charleston, for appellant-respondent.
Joseph S. Brockington, of Wise & Cole, Charleston, for respondent-appellant.
R. Davis Howser, Deborah L. Harrison, and Charles E. Carpenter, Jr., all of Richardson, Plowden, Grier & Howser, Columbia, for respondent.
CURETON, Judge:
This is a declaratory judgment action to determine insurance coverage for damages arising from an automobile accident which occurred on October 1, 1988, when a rental car driven by Kent Lee Pullen struck Eleanor Gebolys, a pedestrian. Gebolys brought suit against Pullen and his employer, Ace Chicago Great Dane, Inc. (Ace Chicago), and received $225,000 in settlement of her claims. In this action, the four insurance companies sought a declaration of the extent of their coverages.[1] Applying Georgia law, the trial judge found coverage under all four insurance policies. Reliance Insurance Company was declared the primary carrier and the others excess carriers. Travelers Insurance Company and General Accident Insurance Company cross-appeal. We affirm.

FACTS
On October 1, 1988, Eleanor Gebolys (Gebolys) was injured when she was struck by an automobile which had been leased by Harold Glen Williams (Williams) from Budget Rent-A-Car of Savannah, Georgia. At the time of the accident, the vehicle was being operated by Kent Lee Pullen (Pullen) with Williams riding as a passenger.
Williams was employed as a sales representative of Great Dane Trailers of Dallas, Texas, a factory owned branch of Great Dane Trailers, Inc. (Great Dane Trailers). Williams travelled from Texas to Hilton Head for a national sales meeting which was scheduled to begin on Sunday afternoon, October 2, 1988, the day following the accident. In accordance with instructions from his supervisor, Williams leased a car at the Savannah Airport to travel to Hilton Head. Great Dane Corporation was to reimburse Williams for the cost of this rental.
Pullen was employed by Ace Chicago, a distributor of Great Dane Trailers in the Chicago area.[2] Like Williams, Pullen was in Hilton Head to attend the annual sales meeting of Great Dane Trailers, and had arrived early in order to play golf in an optional golf tournament scheduled for Sunday morning, October 2, 1988. One of the purposes of the annual sales meeting was to discuss various new products of Great Dane Trailers. Great Dane Trailers required all sales personnel of Ace Chicago to attend this meeting.
On Saturday evening October 1, 1988, Williams, two other employees of Great Dane Trailers, and Pullen left the hotel for dinner at a restaurant on Hilton Head in the vehicle rented by Williams. Williams was driving when they left the hotel, however, when the group had difficulty finding a restaurant, Pullen offered to drive the car. As Pullen was driving with the express permission of Williams, he struck Gebolys. Gebolys filed a *816 lawsuit for injuries she received in the accident, and her claim was settled for $225,000.[3]
The trial court, sitting without a jury in this action at law,[4] held that Reliance Insurance Company was the primary carrier and liable for its $15,000 policy limits.[5] The court further held that Safeco Insurance Companies (Safeco), Travelers Insurance Company (Travelers), and General Accident Insurance Company (General Accident) bore the responsibility for the remaining $210,000 of the settlement pro rata based on their respective policy limits. Accordingly, Safeco owed $1,891.89, Travelers owed $189,189.19, and General Accident owed $18,918.92 toward payment of the settlement.
On appeal, Travelers contends that it is not responsible for any of the settlement because it has no coverage for Kent Pullen as an insured permissive driver. In the alternative, Travelers maintains that if there is coverage, it is excess to General Accident's coverage and the coverage should not be prorated.
General Accident contends that it has no coverage because Kent Pullen was not acting within the course and scope of his employment at the time of the accident.
Safeco admits that it has coverage as the insurer for Kent Pullen. Moreover, Safeco asserts that the trial court correctly held both Travelers and General Accident also have coverage and properly prorated the coverage based on the respective policy limits.

TRAVELERS' APPEAL
The principal issue on appeal is whether the driver, Pullen, was a permissive user of the car involved in the accident. The trial judge held that Georgia law applied to this issue, and Pullen was a permissive user under Georgia law. Ruling alternatively, the judge also held that the driver was a permissive user under South Carolina law. Travelers does not appeal the merits of the judge's ruling under Georgia law. It contends, however, that South Carolina law is controlling, and the driver was not a permissive user under South Carolina law. Assuming South Carolina law applies, we hold there is some evidence supporting the judge's finding that the driver was a permissive user. See S.C. Farm Bureau Ins. Co. v. Windham, 303 S.C. 330, 400 S.E.2d 497 (Ct.App.1990) (On appeal of an action at law tried by the judge without a jury, this court will review the factual findings to determine if there is any evidence to support them). Accordingly, we affirm without reaching the "choice of law" issue raised by Travelers.
As suggested by Travelers, the controlling inquiries in determining if Pullen was a permissive user of the car are: (1) whether Great Dane Trailers gave the driver, Pullen, express or implied permission to drive the rental car; and (2) if not, did Williams have express or implied authority from his employer to allow a third-party (Pullen) to drive the rental car? We hold there was some evidence that Williams had implied authority to allow Pullen to use the car.
At the time of the accident, Pullen was driving the rental car with the express permission of Williams, and Williams was a passenger in the car. Williams and Pullen were in South Carolina attending a national sales meeting conducted by William's employer. William's employer, Great Dane Trailer's, Inc., was the named insured in the Travelers policy, and this policy expressly provided coverage for permissive users of rented cars.[6] There is no dispute that Williams had the express permission of his employer to drive the rental car. That permission contained *817 no prohibition regarding its use by other attendees at the convention. To the contrary, in an unappealed finding of fact, the trial judge found: "At these national sales meetings it was usual and customary for a number of people attending the meeting to drive the rental cars in connection with various activities related to the meeting."
The controlling principles of law are found in American Mut. Fire Ins. Co. v. Reliance Ins. Co., 268 S.C. 310, 233 S.E.2d 114 (1977). There, our Supreme Court stated that the named insured's mere permission to another to use the car, standing alone, does not authorize the original permittee to allow third-party use of the car. The Court continued:
... It is equally well established, however, that the named insured's grant of authority to the original permittee to delegate to others need not be expressed, but may be implied from the broad scope of the initial permission or from the attending circumstances and the conduct of the parties, and a factual determination must be made in each case to determine whether the scope of the initial grant was broad enough to include an implied authority to delegate to another and thus render the latter an additional insured. Implied authority or permission by the named insured, if established, is as effective to extend the coverage of the omnibus clause as that which is formally conferred.
* * * * * *
Thus, it is almost universally held in the modern cases that where the named insured grants his permittee broad and unfettered dominion over his insured automobile, he also impliedly authorizes his permittee to allow a third person to use it, and thus render him an additional insured. The first permittee, by being granted complete dominion over the insured automobile, is put in the shoes of the named insured, and therefore his permittee is held to be the named insured's permittee.
Id. at 315-317, 233 S.E.2d at 117-118 (citations omitted) (emphasis added). We find there is some evidence to support the judge's finding of permissive use under the principles of South Carolina law stated in American, supra.[7]
Travelers next argues that General, an insurer of Pullen's employer and the plaintiff in the present declaratory judgment action, has no legal basis for requiring payment from Travelers. As the basis for this assertion, Travelers appears to rely on the procedural posture of the underlying tort action by the injured pedestrian, wherein she sued Pullen, Ace Chicago (General's named insured), and the rental car. Since the settlement was paid on account of Ace Chicago's potential liability, Travelers contends it should not be required to bear any part of the settlement. Specifically, Travelers argues it has no coverage because: (1) any apportionment of liability should have been between Pullen and Ace Chicago, both being named defendants; (2) Travelers provided no coverage for Ace Chicago; and (3) the settlement was paid due to the potential liability of Ace Chicago. Travelers cites no authority for this argument.
Essentially, Travelers' argument appears to rely on an assumption that there was a potential independent basis of liability for Ace Chicago separate from vicarious liability under the doctrine of respondeat superior for the tort of its employee, Pullen. Nothing in the record, however, supports this assumption. The pleadings from the underlying tort action by the pedestrian are not in the appellate record. Nothing in the record indicates any possibility of Ace Chicago being independently *818 liable to the pedestrian. It is Travelers' burden to provide this Court with an adequate record for review. Thus, assuming there is legal merit to Travelers' argument, it has failed to bear its appellate burden of demonstrating reversible error. Vespazianni v. McAlister, 307 S.C. 411, 415 S.E.2d 427 (Ct.App.1992).
Finally, Travelers argues that even if it has coverage, its excess coverage clause should prevail so as to preclude any coverage, because its policy is a "retrospective rating program" under which its named insured, Great Dane Trailers, must reimburse Travelers for the first $500,000.00 paid for any one accident. Travelers cites no authority for this argument, and we find it to be manifestly without merit. The fact that Travelers' named insured is partially selfinsured is irrelevant to the issue of coverage.
Therefore, we affirm the trial court's finding that the Traveler's policy covers the accident, and the court's proration for the settlement.

GENERAL ACCIDENT'S APPEAL
General Accident insured Ace Chicago under a "garage operations" policy. The policy defined garage operations to include "all operations necessary or incidental to a garage business." It provided liability coverage for accidents "resulting from" garage operations. It defined insureds for "garage operations other than covered `autos'" to include the named insured's employees, "but only while acting within the scope of their duties."
It is undisputed that Pullen was an employee of Ace Chicago. It is also undisputed that he was in Hilton Head to attend the national sales meeting for Great Dane Trailers and that his attendance at the sales meeting was required by the franchise agreement between Ace Chicago and Great Dane Trailers. Based on these stipulated facts, the trial court held that Pullen was acting within the scope of his employment at the time of the accident, and thus, Pullen was insured under the policy issued to Ace Chicago. The trial court further held that Ace Chicago was an insured entitled to coverage under the policy because the mandatory attendance of Pullen at the sales meeting was "necessary or incidental" to Ace Chicago's "garage operations."
From that determination, General Accident appeals alleging first, Pullen's attendance at the meeting was not "incidental" to Ace Chicago's garage operations and, therefore, the policy did not provide coverage, and second, assuming Pullen's attendance at the meeting was incidental to Ace Chicago's garage operations, Pullen was not "acting within the scope of [his] duties" at the time of the accident. We disagree.
We first note that the law strictly construes insurance policies against the drafter and in favor of coverage for the insured. See South Carolina State Budget & Control Bd., Div. of Gen. Servs., Ins. Reserve Fund v. Prince, 304 S.C. 241, 403 S.E.2d 643 (1991). With this principle, the stipulated facts, and appellate scope of review in mind, we hold there is some evidence to support the trial judge's findings that Pullen's attendance at the meeting was "necessary or incidental" 'to Ace Chicago's garage operations, and that he was acting within the scope of his duties at the time of the accident.
As noted earlier, Pullen's attendance at the meeting was required by the distributorship agreement between his employer and the Williams' employer. Thus, as found by the trial judge, his attendance was both necessary and incidental to his employer's garage operations.
General Accident cites McAllister v. Graham, 287 S.C. 455, 339 S.E.2d 154, 156 (Ct.App.1986), in support of its argument that Pullen was not acting within the scope of his employment at the time of the accident. There, this court found that an employee who had an accident while driving a company car to a coffee shop after visiting his son at the hospital, acted outside the scope of his employment. General Accident also cites Harris v. United States, 718 F.2d 654, 656 (4th Cir.1983), where a soldier on his way to a party on a nearby army base offered a ride to two stranded motorists. The Fourth Circuit held that the soldier was not acting in his military role at the time of the accident.
*819 General Accident contends that Pullen's actions prior to the accident were analogous to the private or personal business being conducted by the employees which barred recovery in McAlister and Harris, supra. In support of this assertion, General Accident avers: (1) the national sales meeting was to start Sunday afternoon; (2) Pullen arrived on Saturday so that he could play in an "optional" golf tournament on Sunday morning, having travelled from the Chicago area to Hilton Head; and (3) the accident occurred on Saturday night when Pullen was travelling to dinner. General Accident maintains that travelling to dinner was not within Pullen's scope of duties, and that arriving early to play in the golf tournament was a personal matter not within Pullen's scope of duties. We disagree.
Under South Carolina law,[8] the act of eating, including travel to and from a restaurant, is within the scope of employment when the employee is out-of-town on the employer's business unless the circumstances constitute a deviation from the employer's business. Merritt v. Smith, 269 S.C. 301, 237 S.E.2d 366 (1977) (death of employee compensable under the Workers' Compensation Act, i.e., within the employee's scope of employment, where it resulted from a one car accident while travelling from restaurant back to motel while employee was out-oftown attending a meeting);[9] Here, there is no evidence of a deviation. The only evidence is that Pullen was going directly from the hotel to a restaurant. Thus, the only question is whether there was any evidence that the driver's presence in Hilton Head at the time of the accident was within the scope of his duties.
It is well established that an employee need not be engaged in the "actual performance" of his express duties to be acting within the scope of his employment. "It is sufficient if the employee is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment." Beam v. State Workmen's Compensation Fund, 261 S.C. 327, 332, 200 S.E.2d 83, 86 (1973) (employee's injury in car accident while travelling to meeting "to be held the next day" held compensable). We find there is some evidence to support the trial judge's finding that Pullen was acting within the scope of his duties at the time of the accident. One purpose of the meeting was to educate salesmen like Pullen about new products from Great Dane Trailers. Although the meeting began on Sunday afternoon, Pullen had to fly from Chicago to Hilton Head. It is reasonably inferable that arriving on Saturday was authorized by, consistent with, and incidental to his employer's purpose of having Pullen at the meeting in time for the convention's afternoon commencement. It is also reasonably inferable that Pullen's participation in the golf tournament on Sunday morning with other persons attending the meeting was consistent with the purpose of the meeting.
All other contentions and arguments raised by the parties are manifestly without merit and we dispose of them under provisions of Rule 220(b)(2) S.C.A.C.R. and S.C.Code Ann. § 14-8-250 (1976).
For all of the foregoing reasons, the appealed order is
AFFIRMED.
HOWELL, C.J., and SHAW, J., concur.
NOTES
[1] Each insurance carrier had the following policy limits:

Insurance Carrier Named Insured Policy Limits
The Travelers Ins. Co. Great Dane Trailers, Inc. $10,000,000
General Accident Ins. Co. Ace Chicago Great Dane, Inc. $1,000,000
SAFECO Ins. Co. of America Kent Lee Pullen $100,000
Reliance Ins. Co. Budget Rent-A-Car $15,000

[2] Great Dane Trailers, Inc. and Ace Chicago Great Dane, Inc. are entirely separate companies.
[3] The settlement reserved the right of the insurers to have this declaratory judgment action determine their respective responsibilities for the settlement.
[4] An action to declare excess or secondary liability coverage is at law. S.C. Farm Bureau Ins. Co. v. Windham, 303 S.C. 330, 400 S.E.2d 497 (Ct. App.1990).
[5] There is no challenge on appeal to the finding that Reliance is the primary carrier and liable for $15,000. Reliance is not a party to this appeal.
[6] The Travelers policy provides automobile liability insurance for "any auto" as a covered auto under the policy. The policy also defines "insureds" to include:

b. Anyone else while using with your permission a covered "auto" you own, hire, or borrow ...
[7] In so ruling, we do not overlook Travelers' reliance on the terms of the rental contract which prohibited third-party drivers. This reliance, however, is misplaced because the proper focus is on the named insured, i.e., the renter's (William's) employer, rather than the owner of the car, i.e., the rental company. Cf. State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co., 255 S.C. 392, 179 S.E.2d 203 (1971) (fact that original permittee owns or has an ownership interest in the car is not controlling; coverage depends upon the consent of the named insured). Here, there is no evidence that Williams' employer was aware of the prohibition in the rental contract or that it otherwise prohibited the renter from allowing a third-party to drive the rental car. We also note that the trial court held that the rental agency's policy with Reliance Insurance Company does provide coverage, and no party has appealed that finding.
[8] We note that the parties do not raise any "choice of law" issues as to General's appeal. General relies solely on South Carolina law.
[9] Although Merritt announced a "scope of employment" rule for workers' compensation cases, that rule is applicable to the "scope of duty" question presented here, particularly since the insurance policy does not define this phrase. See South Carolina Budget & Control Bd., Div. of Gen. Servs., Ins. Reserve Fund v. Prince, 304 S.C. 241, 403 S.E.2d 643 (1991) (reasonable in an insurance coverage case to use workers' compensation principles on the "scope of employment" to interpret a "course of volunteer employment" provision in an insurance policy, because insurance contracts are generally construed against the party who prepares them and liberally in favor of the insured).