**Kitt E. KENNEDY, Jr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 82–1533–0.**

United States District Court,
D. South Carolina,
Columbia Division.

April 27, 1984.

F. David Butler, Columbia, S.C., for plaintiff.

Henry Dargan McMaster, U.S. Atty., John B. Grimball, Asst. U.S. Atty., Columbia, S.C., for defendant.

## OPINION AND ORDER

PERRY, District Judge.

This is an action against the United States for damages under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The plaintiff, a South Carolina resident, alleges that on November 11, 1980, while lawfully on

the premises of Moncrief Army Hospital at Fort Jackson, South Carolina, he was assaulted, kicked, subjected to violence and placed under arrest by United States Army Military Police, all without justification. He seeks recovery of damages upon two causes of action, (1) false arrest, and (2) assault and battery.

In its answer, the United States, while admitting that the plaintiff filed a claim with the Department of the Army concerning the matter, denies all remaining allegations of the complaint. The defendant further asserts that it is not liable to the plaintiff because all acts complained of in the complaint were done by the defendant's agents in good faith, in the exercise of their assigned duties, with reasonable belief in the validity of the arrest and search of the plaintiff and in the necessity of carrying out the search and arrest in the manner done.

### I

It appears from the testimony at trial that plaintiff, a Vietnam War veteran who was an employee at the Fort Jackson Commissary, completed work for the day on the evening of the incident at about 12:30 a.m. Plaintiff's wife, who customarily drove him to and from work, had not yet arrived to pick him up and he therefore walked from the commissary to Moncrief Hospital where he telephoned his residence. Plaintiff was informed by his daughter that his wife was enroute. He testified that shortly thereafter, while standing in front of the telephone, United States Army Military policemen approached him with pistols drawn and aimed in his direction; that he was kicked, handcuffed, and transported to the Provost Marshall's office, searched, detained for a short time without his consent and finally released. When they released him, the Military policemen informed the plaintiff that they had been looking for an individual (a black male) who had allegedly committed a robbery and that they had mistakenly identified the plaintiff as the robber. Plaintiff acknowledged on cross-examination that the entire incident lasted approximately an hour. He testified that in addition to the mental anguish suffered by him, the kick to his ankle was painful and that he incurred medical expenses in the sum of $100.00 and lost two weeks from his work on account of the incident. Plaintiff testified that he was injured during the Vietnam War and that the ankle had been damaged by shrapnel. Additionally, he testified that as a result of the incident he is no longer able to job and can no longer stand constantly. Dr. Walter Kochanski, an orthopedic surgeon, testified that he examined the plaintiff and that he reviewed the history of the incident along with information concerning the plaintiff's war injuries. He testified that he found swelling of the plaintiff's ankle together with increased pain and tenderness and that in his opinion the plaintiff had suffered a significant injury. In Dr. Kochanski's opinion the plaintiff suffered an additional disability of 2%. Moreover, he testified that the plaintiff's ankle would probably become progressively worse and that he would suffer additional trauma.

Witnesses for the government testified that earlier in the evening the Richland County, South Carolina Sheriff's Department issued a radio message to law enforcement officials in the surrounding areas that a convenience store located on Garners Ferry Road had been robbed by a black male wearing a beard. The purpose of the radio message was to notify all police agencies concerning the incident and to request their assistance in apprehending the robber. No further description of the robber was given, or mentioned by the military policemen. One of the military policemen, Sergeant Ernest Sealey, testified that he received a telephone call from the military policeman who was on duty at Moncrief Army Hospital that an individual was at the hospital who might be the person described in the radio message. He did not set forth the description which was communicated to him. Thereupon, two or more military policemen proceeded to the hospital and apprehended the plaintiff. Sergeant Sealey and others described the policies and procedures which govern them

in apprehending an individual and testified that they apprehended the plaintiff in accordance with that procedure by searching him and handcuffing him and then transporting him to the Provost Marshall's office. Sergeant Sealey denies that the plaintiff was kicked violently or otherwise harmed but acknowledged that in accordance with their standard procedure, one of the officers stood behind the plaintiff when he was apprehended, required him to raise his hands against a wall and spread his feet and, in the process, *slightly* kicked one of the plaintiff's feet or ankle to enforce the order that he spread his feet apart.

## II

28 U.S.C. § 2674 provides that: The United States shall be liable respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as private individuals under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages....

Thus, if a private individual or corporation would be liable to the plaintiff for the acts alleged in the complaint, the above statute renders the United States liable. And, of particular significance to this case, liability of the United States extends to "acts or omissions of investigative or law enforcement officials of the United States Government ... which arise from 'assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.'" 28 U.S.C. § 2680.[1] In suits under the Federal Tort Claims Act, the law of agency of the place of the alleged tortious conduct is applied to determine whether a government employee is acting in the scope of his employment. *Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); *Cooner v. United States,* 276 F.2d 220 (4th Cir.1960). It is acknowledged that the military police officers were on duty and acting within the scope of their authority when they arrested the plaintiff.

Therefore, the plaintiff presses this case against the United States under the doctrine of *respondeat superior.* That doctrine is described by the South Carolina Supreme Court as follows:

The doctrine of *respondeat superior* rests upon the relation of master and servant. A plaintiff seeking recovery from the master for injuries must establish that the relationship existed at the time of the injuries, and also that the servant was then about the master's business and acting within the scope of his employment.

It is well settled that the liability of the master for the torts of his servant arises only when the servant is acting about the master's business, within the scope of his employment; if he is upon his own business acting outside of his employment, the master is not liable. An act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and in furtherance of the master's business. These general principles govern in determining whether an employer is liable for the acts of his servant. *Bolin v. Bostic,* 235 S.C. 319, 111 S.E.2d 557.

The act of a servant done to effect some independent purpose of his own and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of his employment so as to render the master liable therefor. Under these circumstances, the servant alone is liable for the injuries inflicted. If a servant steps aside from the master's business for some purpose wholly disconnected with his employment, the relation of master and servant is temporarily suspended; and the master is not liable for his during such time. *Hancock v. Aiken Mills,* 180 S.C. 93, 185 S.E. 188; *Hyde v. Southern Grocery Stores,* 197 S.C. 263, 15 S.E.2d 353.

---

1. Prior to the enactment of this statute no cause of action against the United States existed on account of assault, battery or false imprison-

ment, etc. when committed by investigative or law enforcement officers.

*Lane v. Modern Music, Inc.*, 244 S.C. 299, 136 S.E.2d 713, 716 (1964).

Thus, if the military police acted unlawfully, the United States is liable for the resultant injuries and damages suffered by the plaintiff. 28 U.S.C. § 2674. *Bettis v. United States*, 635 F.2d 1144, 1147 (5th Cir.1981).

The torts of assault and battery and false arrest are exempt from the coverage of the Federal Tort Claims Act *except* in those instances where the alleged tort feasors are persons with the power "to make arrests for violations of Federal Law." 28 U.S.C. § 2680(h). Military police are law enforcement officers who possess power to make arrest for violations of Federal law. While they normally confine their activities to enforcement of military law, they do possess all powers that civilian law enforcement officers have, on military property. *See* Army Regulation 210–10 paras. 2–9; Army Regulation 600–40 para. 3. Therefore, the Court concludes that under 28 U.S.C. § 2680(h), the United States is liable for tortious conduct of the military police amounting to assault and battery and false arrest if established by the evidence.

## III

### A

Consideration is now given the plaintiff's contention that he was unlawfully arrested and assaulted. The military policemen, responding to a radio message from the Richland County Sheriff's Department were on the alert for a black male wearing a beard, believed to have robbed a convenience store on Garners Ferry Road near Fort Jackson. Sergeant Ernest Sealey, the Military Police team leader on duty when the incident occurred, testified that his unit received the call from the MP on duty at the hospital that an individual fitting the description of the robber was at the hospital. Military Policemen were dispatched to the scene and, despite plaintiff's insistence that he had done no wrong the plaintiff was told to "shut up," he was

frisked for weapons (none were found), kicked on the ankle, handcuffed and carried to the Provost Marshal's office. Eventually he was released with the explanation that the police had mistaken him for the robber. Significantly, the only description of the suspect was that he was a black male wearing a beard. No description was given of the suspect's height, weight, skin color (i.e. light brown, medium brown, dark brown, black, etc.), hair (whether long, short, afro styled, slick, straight, etc.) age, clothing (whether in shirt sleeves, sweater, suit, etc.) or anything else that might have set the suspect apart from the many thousands of black males who wear beards. Indeed, with respect to the beard, no description was given concerning its color or length or whether it was full, partial or otherwise. Yet, on the vague description given, the military police proceeded to arrest the plaintiff as fitting the description of the alleged robber. Moreover, prior to affecting the arrest, they didn't even inquire concerning the plaintiff's identity, which would have immediately revealed him as an employee of the Fort Jackson Commissary. Instead, they followed the procedure which they utilize when arresting a person "suspected of armed robbery." They approached the suspect (plaintiff) "with caution," drew their weapons, required the plaintiff to raise his hands, spread his feet, frisked him, handcuffed him and, against his will, transported the plaintiff to the Provost Marshal's office.

### B

An unlawful arrest is one made without probable cause. *United States·v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Pritchard v. Perry*, 508 F.2d 423 (4th Cir.1975); *Street v. Surdyka, et al.*, 492 F.2d 368 (4th Cir.1974). Indeed, "an individual not in lawful custody has an 'uncontrovertible' right—a right always of constitutional dimensions to be free from unreasonable interference by police officers and to enjoy 'security from arbitrary intrusion by. the police.'" *Pritchard v. Perry, supra*, at 426; *Jenkins*

*v. Averett,* 424 F.2d 1228, 1231 (4th Cir. 1970). And the use of "unreasonable" force in making an arrest is prohibited. *Jenkins v. Averett, supra,* at 1232.

■ Conversely "[i]n executing their appropriate tasks ... and particularly in the course of making a lawful arrest, they are entitled to use such force as is reasonably necessary to accomplish the task. The reasonableness or excessiveness of the force necessary is a matter to be determined in the light of the circumstances as they appeared to the officer at the time of the arrest...." *Samuel v. Busnuck,* 423 F.Supp. 99, 101 (D.C.Md.1976). Moreover, police action with respect to an arrest is not actionable where there is probable cause for the arrest and where the arresting officer acts in good faith. *Pierson v. Ray,* 386 U.S. 547, 549, 87 S.Ct. 1213, 1215, 18 L.Ed.2d 288 (1967); *Street v. Surdyka, et al., supra,* at 374; *Hill v. Rowland,* 474 F.2d 1374, 1377 (4th Cir.1973); *Eslinger v. Thomas,* 476 F.2d 225, 229 (4th Cir.1973).

### C

■ From the evidence above summarized and otherwise appearing in the record, I find that the military policemen were acting within the scope of their employment as officers of the law when they arrested the plaintiff. I further find that they arrested the plaintiff without probable cause to believe that he had committed a crime and that they thereby subjected the plaintiff to the deprivation of his liberty, secured by the Constitution and laws of the United States. While plaintiff was detained no more than an hour, the circumstances of that detention suggest, and the plaintiff has testified, that he was embarrassed, humiliated and made to appear as a criminal. I also find that the military policemen assaulted and battered the plaintiff when one of them kicked him on the ankle and when they forcibly placed him in handcuffs. The plaintiff has testified and I accordingly find that he suffered excruciating pain to his ankle, that a shrapnel wound to the ankle which he received during the Vietnam War was aggravated; and

that the plaintiff is no longer able to jog, all of which injuries, pain and damage were proximately caused by the unlawful conduct of the military policemen in arresting him without probable cause and in the use of excessive and unreasonable force as set forth in the evidence. I also find on the basis of testimony by Dr. Kochanski, whom I find credible, that the injury to plaintiff's ankle, suffered during the Vietnam War, is aggravated by the injury inflicted upon him by the military police and that the plaintiff continues to suffer trauma and that he has suffered a permanent disability of 2% in addition to that previously suffered by him. On account of the above, the plaintiff testified and I find that he incurred medical bills of $100.00; he lost two weeks from work and his salary of $420.00; his ankle became swollen; he cannot stand consistently; he cannot jog; he continues to suffer excruciating pain and must take pain medication.

### IV

■ As stated above, the United States alleges that the military policemen acted in good faith, in conformity with their procedures and regulations and within the bounds of reason in acting as they did. If corroborated by the evidence and applicable law, the Government would not be liable for their acts. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Street v. Surdyka et al.,* 492 F.2d 368 (4th Cir.1974); *Norton v. United States,* 581 F.2d 390 (4th Cir.1978). The standard for application of the defense of reasonable belief and good faith is set forth in *Hill v. Rowland,* 474 F.2d 1374 (4th Cir.1973) as follows:

... [T]o prevail the police officer need not allege and prove probable cause in the constitutional sense. The standard governing police conduct is composed of two elements, the first is subjective and the second is objective. Thus the officer must allege and prove not only that he believed, in good faith, that his conduct was lawful, but also that his belief was reasonable. And, so we hold that it is a

defense to allege and prove good faith and reasonable belief in the validity of the arrest and search and in the necessity for carrying out the arrest and search in the way the arrest was made and the search was conducted. . . .

*Hill v. Rowland, supra,* at 1377. The Court also stated, with respect to the concept of reasonable belief, that

... there are two standards to be considered. The first is what constitutes reasonableness for purposes of defining probable cause under the fourth amendment for the protection of citizens against governmental overreaching. The other is the less stringent reasonable man standard of the tort action against government agents. The second and lesser standard is appropriate because, in many cases, federal officers cannot be expected to predict what federal judges frequently have considerable difficulty in deciding and about which they frequently differ among themselves.· It would be contrary to the public interest if federal officers were held to a probable cause standard as in many cases they would fail to act for fear of guessing wrong. Consequently the law ought to, and does, protect government agents if they act in good faith and with reasonable belief in the validity of the arrest. . . .

*Hill v. Rowland, supra,* at 1378.

■ In *Norton v. United States,* 581 F.2d 390 (4th Cir.1978) the Court held that the defenses of good faith and reasonable belief are available to the United States as well as to individual officers, and that the liability of the United States is only as broad as the liability of its agents. The Court stated:

. . . . There can be little question but that imposition of liability without regard to the officers' defense of good faith and reasonable belief would be a substantial enough departure from the general principles of *respondeat superior* and would impose a potentially burdensome enough impact on the federal treasury that it should be supported by a clear expression of legislative intent in either the

statute itself or in the accompanying legislature history. *Cf. Laird v. Nelms,* 406 U.S. [797] at 802 [92 S.Ct. 1899 at 1902, 32 L.Ed.2d 499 (1972) ]; *Feres v. United States,* 340 U.S. 135 [71 S.Ct. 153, 95 L.Ed. 152] (1950). Because we find no clear statement of a legislative policy to expand the government's vicarious liability beyond the scope of its agents' direct liability, this rule of construction requires that we reverse the decision of the district court and· remand this case in order to allow the government to produce evidence of its agents' good faith and reasonable belief in the legality of their conduct.

*Id.* at 397.

All military policemen who were involved have testified that they acted in good faith and that they believed at the time that they were acting properly. That testimony places them within one of the two elements (the subjective element) of the standard which governed their conduct in arresting the plaintiff. *Hill, supra.* The other element (the objective element) of the standard requires allegation and proof that their (the military policemen's) belief in the lawfulness of their conduct was reasonable. *Id.*

In this case it is not contended that the plaintiff was identified as the robber. The Military Policemen acknowledge that they arrested the wrong man. Indeed, the plaintiff was arrested solely because he is a black male who, at the time, had a beard. As stated in Part III above, this vague description could not have led to any inference that the plaintiff was the individual sought by the police. Thus it was not, under any rational approach, reasonable to believe that plaintiff was the robber. *Hill v. Rowland,* 474 F.2d 1374 (4th Cir.1973). It is patently obvious that probable cause to arrest the plaintiff was nonexistent. Nor was their conduct reasonable under the less stringent reasonable man standard of tort action against government agents. *Id.,* at 1378. I am unable, therefore, to conclude that the military policemen's belief in the lawfulness of their conduct was

reasonable. Therefore, the United States cannot prevail in its proffered defense.

For the reasons set forth above, I find for the plaintiff in the sum of Twenty-Five Thousand and No/100 ($25,000) Dollars. Judgment for the plaintiff will accordingly be entered.

IT IS SO ORDERED.