REVISED, June 28, 1999

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-50904

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON W. MULLIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

June 10, 1999

Before GARWOOD, BARKSDALE and BENAVIDES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Military Police having arrested Jason W. Mullin, a civilian, after seeing him commit a crime at an open military base, primarily at issue is the legality of Mullin's subsequent interrogation and 21-hour detention by the Military Police prior to his being released to local police. We **AFFIRM**.

I.

In April 1996, Military Police were investigating a number of break-in burglaries of vehicles at a parking lot at Fort Hood, Texas. Fort Hood is an open post; in general, persons can enter freely without restrictions.

-1-

At 8:00 p.m. on 2 April, Military Policemen conducting surveillance of the parking lot observed Mullin and a female attempting to break into an automobile. The female was later identified as Mullin's sister, Teresa Bronner, a private in the United States Army, who was stationed at Fort Hood but had an apartment in the adjoining city of Killeen, Texas.

When Military Policemen approached Mullin, he fled. They apprehended him shortly thereafter and took him to the Military Police station at Fort Hood.

Bronner, who remained in her vehicle as Mullin fled, was apprehended and taken to the Military Police station; her vehicle was impounded. She was read her rights, requested an attorney, was released to her unit, and was placed on barracks restriction.

At the station, Mullin told the Military Police that he was "Jason J. Boe", age 16 and homeless. When Sergeant Hatfield, who was investigating the burglaries, arrived, he told Mullin that he was a military police investigator; displayed his credentials; and, prior to questioning Mullin, advised him of his rights, using the section for civilian suspects on the military's rights warning form. Mullin responded that he understood those rights and did not request a lawyer.

Sergeant Hatfield talked to Mullin about the incident that evening, other break-ins, and the misuse of a bank debit card taken during one of them. When the card misuse occurred, the bank automatic teller machine photographed the perpetrator. Sergeant Hatfield showed the photograph to Mullin, noting that the person pictured was dressed identically to Mullin.

Because Mullin claimed to be 16, Sergeant Hatfield contacted the Texas Child Protective Services Agency; it refused to assist because the Military Police could not establish Mullin's identity or age. Sergeant Hatfield contacted the Bell County Juvenile Detention Center; it refused custody. And, the Sergeant contacted the local police (Killeen, Texas), knowing that they were investigating the debit card misuse; the police declined custody.

At 12:30 a.m. on 3 April, approximately four hours after his arrest, Mullin gave a written statement (still using the name "Jason Boe"), stating that he had broken into two vehicles, including the one witnessed by the Military Police; that he took the debit card from the first of the two vehicles; that a different female had helped in the first burglary; that Bronner was unaware of, and had nothing to do with, the other break-ins; that he did not know her last name or address and had met her at a store.

When Sergeant Hatfield ended the interview after 12:30 a.m., he instructed the watch manager that Mullin was a juvenile; that he was to be placed in a detention cell with the door open at all times; and that he was to have the opportunity to rest while the Military Police continued their investigation. The open cell had a restroom, a sink, and a shower.

The Military Police next searched Bronner's impounded vehicle. They discovered photographs of Mullin and Bronner, which indicated that he had known her for more than the claimed 24-hour period.

Around 1:30-2:00 a.m., Sergeant Hatfield returned to the station, had Mullin escorted back to the interview room, and readvised him of his rights. When confronted with the newly discovered photographs, Mullin stated that he had known Bronner for two or three weeks; that she had been involved in the burglaries; and that property stolen from the vehicles could be found in Bronner's apartment. Mullin continued to lie about his identity and age.

At 2:30 a.m., Sergeant Hatfield obtained Bronner's consent to search her apartment in Killeen. There, the Military Police found items stolen in the burglaries and Mullin's wallet, which provided his true identity.

-4-

At approximately 6:30 a.m., following the apartment search, Sergeant Hatfield again retrieved Mullin from the detention cell and readvised him of his rights, using Mullin's actual name. Mullin stated again that he understood his rights and did not request an attorney. Mullin gave his true identity and admitted that he and his sister, Bronner, were involved in the burglaries.

Mullin gave a second written statement around 7:00 a.m., admitting that: he worked with his sister on the vehicle break-ins; they used the stolen debit card to obtain cash; they kept the stolen property in Bronner's apartment; and he had lied in his earlier written statement.

Finally having confirmed Mullin's identity, Sergeant Hatfield conducted a criminal history check and discovered that Mullin was a convicted felon in California, on probation for assault with a deadly weapon. Sergeant Hatfield contacted California authorities to discuss extradition; but, they advised that "the bond was not high enough for extradition". Accordingly, Sergeant Hatfield concluded that he could not release Mullin to California authorities.

Later that morning, the Military Police provided the debit card evidence to the Killeen police. That afternoon, around 5:30

p.m., Mullin was turned over to them pursuant to a Texas arrest warrant for debit card misuse.

Following the state court charge, Mullin was charged in federal district court in November 1996 with the following misdemeanor offenses within the jurisdiction of the United States at Fort Hood: conspiracy with Bronner to commit theft of personal property, 18 U.S.C. § 371 (count 1); such theft from vehicles, 18 U.S.C. § 661 (counts 2, 3, 4, and 5); and knowingly entering Fort Hood for the purpose of committing such theft, 18 U.S.C. § 1382 (count 6).

After seeking unsuccessfully to suppress evidence (including the statements at issue here), followed by a jury trial before a magistrate judge, *see* 18 U.S.C. § 3401, Mullin was found guilty on all six counts. He was sentenced to concurrent terms of ten months imprisonment on counts 1 through 5, and to a consecutive term of six months imprisonment on count 6. The district court affirmed. Mullin began serving his federal sentence in February 1999, following incarceration on his state sentence.

## II.

Mullin does not challenge his conviction on count 5, pertaining to the 2 April break-in observed by the Military Police. But, for the other five counts, he challenges his convictions,

claiming that, on three alternative grounds, his statements given the Military Police were inadmissible: the Military Police lacked authority to detain and interrogate him; the statements were not voluntary; and his arrest violated the Posse Comitatus Act.

A.

Regarding the authority of the Military Police to arrest, detain, and question him, Mullin maintains that, on these facts, Military Police had only "citizen's arrest" authority; and asserts that, accordingly, after the Military Police observed the break-in and properly arrested him, they should have surrendered him to civil authorities immediately.

1.

Acknowledging that there is no express statutory authority for the arrest at issue, the Government claims it can be inferred from the trespass statute Mullin was convicted under on count 6, 18 U.S.C. § 1382, discussed *infra*. The Government's contention is less than half-hearted. We need not decide whether, on the facts before us, Military Police had statutory authority to arrest Mullin; at the very least, they could make a citizen's arrest. As noted, Mullin concedes this.

The Texas Code of Criminal Procedure states:

> A peace officer *or any other person*, may, without a warrant, arrest an offender when the

offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

TEX. CODE CRIM. PRO. art. 14.01 (West 1979) (emphasis added). Restated, although Military Police are not designated peace officers under TEX. CODE CRIM. PROC. art. 2.12, they can make an arrest when Texas law authorizes such an arrest by a "private person". *See United States v. Johnson*, 815 F.2d 309, 313 (5th Cir. 1987) (discussing such authority concerning federal secret service agents); *United States v. Garcia*, 676 F.2d 1086, 1093 n.22 (5th Cir. 1982), *vacated on other grounds*, 462 U.S. 1127 (1983) ("Of course, an employee of the Parks and Wildlife Department may, like any other private citizen, effect a citizen's arrest. A private citizen may arrest without warrant a person who has committed a felony or offense against the peace in the arresting person's presence or within his or her view"); *Sanchez v. State*, 582 S.W.2d 813, 815 (Tex. Crim. App. 1979) (federal border patrol agent could arrest individual for public drunkenness when Texas law authorizes such an arrest by a private citizen).

In this regard, counsel for Mullin stated at oral argument that, because the Military Police observed Mullin breaking into a vehicle, they had probable cause to arrest him; that the arrest was proper; and that this is the reason why, as noted, he is not

challenging his conviction for the observed break-in (count 5).
*See* **Johnson**, 815 F.2d at 313.

2.

In support of his claim that, following his arrest, he should have been turned over immediately to civil (state or federal) authorities, and that, therefore, the Military Police lacked the authority to interrogate or further detain him, Mullin relies primarily on **Alexander v. United States**, 390 F.2d 101 (5th Cir. 1968), which involved an investigation by postal inspectors of a postal employee. The inspectors misled the employee as to the purpose of their investigation, extracted a confession, and then told the employee to report back to the office the following day. **Id.** at 107-08. Our court held that the statements were not voluntary:

> We are not reviewing the actions of one specifically authorized to protect the public. The inspectors' chameleonic tactics, i.e., arresting as federal officers and claiming legality as state citizens, cannot vest them with more rights than those granted by the Texas statutes. These statutes are careful in prescribing safeguards which must be respected in a citizens' arrest, and rigid compliance must be required when citizens detain others for what may constitute even a putative arrest.

*Id.* at 108-09.  Mullin asserts that this means that detention and interrogation by persons vested only with citizen's arrest authority (such as the Military Police here) is improper.

Relying on *Kennedy v. United States*, 585 F. Supp. 1119, 1123 (D.S.C. 1984), the magistrate judge rejected this argument, stating that "the Military police are law enforcement officers who possess the power to make arrest for violations of Federal law".  In affirming, the district court relied instead on *United States v. Banks*, 539 F.2d 14 (9th Cir.), *cert. denied*, 429 U.S. 1024 (1976).

*Kennedy* was an action under the Federal Tort Claims Act (FTCA) concerning an arrest by Military Police.  In addressing whether the Military Police were "persons with the power 'to make arrest for violations of Federal Law'", *Kennedy*, 585 F. Supp. at 1123 (quoting 28 U.S.C. § 2680(h)), the court stated:

> Military police are law enforcement officers who possess power to make arrest for violations of Federal law.  While they normally confine their activities to enforcement of military law, they do possess all powers that civilian law enforcement officers have, on military property. *See* Army Regulation 210-10 paras. 2-9; Army Regulation 600-40 para. 3.

*Id.*

But, neither of the cited Army Regulations stated that, on military property, Military Police have the same powers as civil

-10-

law enforcement officers.  Along this line, Army Regulations are *not* cited here by the Government.

Likewise, the precedent used by the district court in affirming Mullin's convictions, **Banks**, is distinguishable because "[t]he arrest [in **Banks**] followed a search, made pursuant to a warrant for the search of the room [in the barracks] and the persons found there issued by the base commander". **Banks**, 539 F.2d at 15.  Additionally, an affidavit by an investigator provided the probable cause for the search warrant.  **Id.**  Finally, the Ninth Circuit relied upon the Air Force's interpretation of the earlier-referenced 18 U.S.C. § 1382 (proscribes entering a military base for an unlawful purpose) as authorizing the detention of civilians who commit crimes on military bases.  **Id.** at 16 n.2.  In the case at hand, there was no warrant authorizing Mullin's arrest; as noted, no Army Regulation interpreting § 1382 in a comparable manner has been identified; and, as also noted, § 1382 does not, *on its face,* authorize the arrest and detention of civilians.

This notwithstanding, the Military Police acted legally in questioning and otherwise detaining Mullin.  Title 10 U.S.C. § 809(e) provides a framework for when members of the military may make arrests.  It states generally that arrests may be made when an order to arrest has been given and there is probable cause to

arrest. *See* § 809(a)-(d). However, as noted by the Ninth Circuit in **Banks**, § 809(e) provides that "[n]othing in this article limits the authority of persons authorized to apprehend offenders to secure the custody of an alleged offender until proper authority may be notified".

**Alexander**, on which Mullin relies, is easily distinguishable. There, although the postal inspectors were investigating a crime, they misled Alexander as to the purpose of the investigation when questioning him and gaining his consent to search. **Alexander**, 390 F.2d at 107.

The case at hand is quite different. The Military Police witnessed Mullin committing a crime on military property. He was never misled regarding the purpose of his detention or questioning. Unlike **Alexander**, where our court expressed concern regarding "detention, interrogation, and trickery by every self-appointed detective", *id.* at 109, the Military Police were not using deception to investigate a crime, but were questioning a subject they had witnessed committing a crime on the military base similar in nature to several other recent crimes there.

Our court has affirmed the legality of similar arrests, detentions, and interrogations.[1]  In **Johnson**, 815 F.2d at 311, federal secret service agents arrested the defendant in Texas based on an outstanding California arrest warrant.  "Immediately following the arrest, secret service agents took Johnson into federal custody, searched him, *questioned him about his counterfeiting activities*, and inventoried his car." **Id.** (emphasis added).  Regarding Johnson's challenge to the lawfulness of his arrest, our court affirmed, based on the fact that the agents acted upon reasonable information that Johnson had a felony charge in California, thus rendering the arrest a valid citizen's arrest

---

[1]It is unclear whether Mullin challenges the introduction of evidence discovered in the searches performed by the Military Police (i.e., the search of Mullin when he was initially arrested, and the searches of Bronner's vehicle and apartment).  At one point in his brief, Mullin states that the Military Police "did not have the authority to arrest, jail, question, and search [Mullin]".  However, he does not make any further arguments in his brief specifically in regard to the evidence from the searches.  Of course, arguments not briefed are deemed waived. *See, e.g.*, **Hidden Oaks Ltd. v. City of Austin**, 138 F.3d 1036, 1045 (5th Cir. 1998).

Further, we note that Texas courts have allowed the introduction into evidence of items seized as the result of a lawful citizen's arrest. *See* **Burkett v. State**, 760 S.W.2d 345, 346 (Tex. Ct. App. 1988) (affirming trial court's decision to admit evidence regarding items found on defendant's person following lawful citizen's arrest); **Douglas v. State**, 695 S.W.2d 817, 820 (Tex. Ct. App. 1985) (same).  Also, Texas Code of Criminal Procedure article 18.16 states that private citizens may seize stolen property from the alleged offender if there is "reasonable ground to suppose the property to be stolen".  Finally, the Fourth Amendment does not require the suppression of evidence taken illegally by private citizens. **Burdeau v. McDowell**, 256 U.S. 465, 475 (1921); *see also* **Burkett**, 760 S.W.2d at 346.

under Texas law. *Id.* at 313. *See also* **United States v. Chapman**, 420 F.2d 925, 926 (5th Cir. 1969) (arrest and seizure of evidence by postal inspectors was valid Florida citizen's arrest because they acted on "credible information").

Moreover, Texas cases indicate that the actions of the Military Police did not exceed their citizen's arrest authority. In **Turner v. State**, 901 S.W.2d 767, 770 (Tx. Ct. App. 1995), "two armed security guards compelled all of the men to get out of the vehicle, took the gun from the glove box, patted the men down for other weapons, took their identification, *questioned them further*, and called the sheriff's office". (Emphasis added.) This citizen's arrest was held lawful. *Id.* at 771. *See also* **Douglas v. State**, 695 S.W.2d 817, 819 (Tex. Ct. App. 1985).

Therefore, the Military Police acted reasonably and within the bounds of Texas citizen's arrest authority.[2] Mullin, for obvious reasons, does not maintain that, after he was seen committing a

---

[2]**Alexander** may imply that suppression is proper where state officers exceed their authority under state law, even though they did not otherwise violate the Fourth Amendment, as where an arrest is made on probable cause but without a warrant required by state law. In this respect, **Alexander** relies on **United States v. Di Re**, 322 U.S. 581 (1948). *See* **Alexander**, 390 F.2d at 105-07. However, we have held that **Di Re** was superceded by subsequent Supreme Court decisions. *See* **United States v. Walker**, 960 F2d 409, 415-16 (5th Cir. 1992). Consequently, such an implication from **Alexander** is likely no longer appropriate. In any event, we need not address that question, because, as stated, the Military Police did not exceed their Texas citizen's arrest authority.

-14-

crime, the Military Police should have simply escorted him off the post and released him. Instead, he contends that they should have released him immediately to federal or state civil authorities. But, how could they do that without at least knowing his identity and age? He lied immediately about that. And, his lie that he was a juvenile delayed the necessary interrogation process and his ultimate release to civil authorities.

On these facts, the Military Police acted reasonably and lawfully: they saw Mullin commit a crime *on military property*; they were conducting an on-going investigation of such crimes; a soldier (Bronner) was also involved in the observed crime; attempts were made early on to release Mullin to civil authorities; and Mullin's lies greatly delayed that release. In short, the detention and interrogation were lawful.

## B.

In the alternative, Mullin maintains that his statements to the Military Police were not voluntary, because they deceived him into thinking they were law enforcement officers with authority over him; and because he was held for 21 hours, during which the Military Police are claimed to have yelled at, and cursed, him. These contentions are totally without merit.

The Government has the burden of proving, by a preponderance of the evidence, that a defendant voluntarily waived his rights and that his statements were made voluntarily. *United States v. Restrepo*, 994 F.2d 173, 183 (5th Cir. 1993). A confession is voluntary if it is the product of the defendant's free and rational choice; it is voluntary in the absence of official overreaching, either by direct coercion or subtle psychological persuasion. *Id.* Whether a confession is voluntary is determined by considering the "totality of the circumstances". *Id.* In reviewing a ruling on a motion to suppress a confession, we give credence to the credibility choices and fact finding by the district court unless they are clearly erroneous; the ultimate issue of voluntariness is a legal question reviewed *de novo*. *Id.*

The magistrate judge held that Mullin "knowingly and voluntarily" waived his rights to remain silent and to have an attorney; and that Mullin's confession was not coerced. The district court affirmed.

### 1.

At the suppression hearing, Military Police testified that they questioned Mullin about the observed 2 April vehicle break-in, other such break-ins on the base, and the debit card misuse that had been reported; and that they confronted him with a photograph

taken at a bank automatic teller machine showing a person dressed identically to Mullin.

Sergeant Hatfield identified himself to Mullin as a military police investigator; displayed his credentials to Mullin; and, prior to any questioning, informed Mullin of his rights. Mullin responded that he understood his rights and did not request an attorney.

Believing that Mullin was a juvenile, Sergeant Hatfield contacted several state authorities to take custody of Mullin, but these attempts were initially unsuccessful. After his first interview and partial confession, Mullin was allowed to rest in an open cell. After further investigation revealed Mullin's true identity, he was once again informed of his rights. Again, Mullin stated that he understood his rights and he did not request an attorney. At this point (early morning of 3 April), Mullin made a full confession. After being turned over to the Killeen police later that day, Mullin was taken before a state magistrate for a bond hearing.

Our having concluded that the Military Police had the authority to interrogate Mullin, his assertion that they deceived him into thinking they had such authority is meritless. Further, the evidence adduced at the suppression hearing does not support

-17-

Mullin's allegation that oppressive circumstances coerced a confession.

2.

In addition, Mullin's 21-hour detention does not render his confession involuntary.

a.

The 21-hour delay does not, *per se*, render Mullin's confession involuntary or inadmissible. *See, e.g.*, **County of Riverside v. McLaughlin**, 500 U.S. 44, 56-57 (1991) (probable cause hearing within 48 hours of arrest is presumptively reasonable); **West v. Johnson**, 92 F.3d 1385, 1404 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997) (confession taken 30 hours after arrest was voluntary); **Neumuller v. State**, 953 S.W.2d 502, 512 (Tex. Ct. App. 1997) ("Even an unreasonable delay in bringing an accused before a magistrate, of which we have no evidence here, will only render a confession inadmissible upon a showing of some causal connection between the delay and the making of the confession").

b.

"[W]here there is no evidence to support a finding that the delay was for the purpose of obtaining a confession, there is no evidence that the delay had a coercive effect on the confession,

-18-

there is no causal connection between the delay and the confession, and the confession was otherwise voluntarily given ... the defendant has not shown prejudice by the delay." *United States v. Perez-Bustamante*, 963 F.2d 48, 53 (5th Cir. 1992) (quoting *United States v. Bustamante-Saenz*, 894 F.2d 114, 120 (5th Cir. 1990)).

There is no evidence that the Military Police delayed turning Mullin over to civil authorities for the purpose of extracting a confession, or that the delay caused him to confess. To the contrary, the delay was caused by Mullin's lies to the Military Police, especially that he was a homeless juvenile named "Boe". Accordingly, the Government met its burden of establishing that Mullin's confession was voluntary. *Restepo*, 994 F.2d at 183.

C.

Alternatively, Mullin asserts that his statements are not admissible because the investigation by Military Police of a state law matter – debit card misuse outside Fort Hood – violated the Posse Comitatus Act, 18 U.S.C. § 1385:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, wilfully uses any part of the Army or Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

The Act is designed to restrict military involvement in civilian law enforcement.  *See **United States v. Hartley***, 796 F.2d 112, 114 (5th Cir. 1986); *see also generally* Roger Blake Hohnsbeen, Note, ***Fourth Amendment and Posse Comitatus Act Restrictions on Military Involvement in Civil Law Enforcement***, 54 GEO. WASH. L. REV. 404 (1986).

We need not address whether the Act was violated.  "[E]ven where a violation of the Posse Comitatus Act is found or suspected, courts have generally found that creation or application of an exclusionary rule is not warranted."  ***Hartley***, 796 F.2d at 115 (citing ***United States v. Wolffs***, 594 F.2d 77 (5th Cir. 1979)).  In ***Wolffs***, 594 F.2d at 85, our court pretermitted addressing whether there was a violation of the Act in a case involving the use of Army personnel in a narcotics investigation:

> We need not decide that complex and difficult issue because, assuming without deciding that there was a violation, application of an exclusionary rule is not warranted.  If this Court should be confronted in the future with widespread and repeated violations of the [Act] an exclusionary rule can be fashioned at that time.

***Id.*** (citing ***United States v. Walden***, 490 F.2d 372 (4th Cir. 1974) and ***State v. Danko***, 548 P.2d 819 (Kan. 1976)).  *See also **Hartley***, 796 F.2d at 115 (noting that other courts have also found that exclusionary rule is not warranted for violations of the Act);

-20-

Major Saviano, *The Exclusionary Rule's Applicability to Violations of the Posse Comitatus Act*, 1995-JUL ARMY LAW. 61, 62-64 (1995) (same).

The circumstances presented in Mullin's case – gathering by Military Police of limited information concerning debit card misuse related to one of the on-base break-ins – provides no basis to warrant the creation or application of an exclusionary rule. *See Hartley*, 796 F.2d at 115. Accordingly, Mullin's claim under the Posse Comitatus Act fails.

## III.

For the foregoing reasons, the judgment is

*AFFIRMED.*