IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-41110
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNETH A. TATUM

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(99-CR-164)
_____

December 14, 2001

Before HIGGINBOTHAM, BARKSDALE, and STEWART, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:[*]

Kenneth A. Tatum was convicted of murdering two men with a firearm in connection with two armed robberies. He brings numerous challenges to his conviction, including a Commerce Clause-based challenge to federal jurisdiction over these assertedly local crimes. We affirm.

I

On May 26, 1999, a federal grand jury indicted Tatum on two counts. Count One alleges the armed bank robbery of the First State

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Bank in Overton, Texas, resulting in death in violation of 18 U.S.C. § 2113(a), (d), and (e). Count Two alleges that Tatum used or carried a firearm during and in relation to a crime of violence—the robbery of Ely and and attempted robbery of Dusek's Auto Sales. Jury selection began on July 31, 2000 in Tatum's case, and trial testimony began on August 21, 2000. The jury found him guilty on both counts, and on September 7, 2000 he was sentenced to life in prison without the possibility of release. Tatum filed a timely notice of appeal.

## II

### - 1 -

Tatum first argues that his conviction for attempted robbery resulting in death should be overturned because the government failed to prove that the deposits of the First State Bank of Overton were insured by the Federal Deposit Insurance Corporation (FDIC) on November 4, 1998. In evaluating the sufficiency of the evidence, this court asks whether a reasonable trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt.[1] We consider the evidence in the light most favorable to the verdict, drawing all reasonable inferences in favor of the verdict.[2] We review jury verdicts with great deference and will not supplant the jury's determination of

---

[1] *United States v. Cathey*, 259 F.3d 365, 368 (5th Cir. 2001).

[2] *Id.*

2

credibility with that of our own.[3]

The federal bank robbery statute under which Tatum was convicted defines a "bank" as one whose deposits are insured by the FDIC.[4] Proof that the institution meets this definition of "bank" at the time of the robbery is an essential element of the offense that must be proven beyond a reasonable doubt to establish federal jurisdiction.[5]

At trial, the bank president testified that the First State Bank is insured by the FDIC and that the bank pays quarterly assessments to the FDIC. The government also introduced into evidence a copy of a certificate that indicated that the bank is insured by the FDIC, as well as photos of the interior of the bank showing an FDIC notice on display in the bank. Tatum argues that this evidence is insufficient to prove the bank's insured status at the time of the robbery. The evidence is sufficient under our precedents, even without specific testimony that the bank was federally insured at the time of the robbery.[6]

- 2 -

Tatum also argues that even if there was sufficient proof of

---

[3] *United States v. McCauley*, 253 F.3d 815, 819 (5th Cir. 2001).

[4] 18 U.S.C. § 2113(a), (f).

[5] *United States v. Guerrero,* 169 F.3d 933, 944 (5th Cir. 1999).

[6] *Id.*

the bank's insured status, the evidence was insufficient to sustain his conviction under Count 1. From the evidence we conclude that a reasonable juror could have believed beyond a reasonable doubt that Tatum committed the offense. We recount here the evidence amassed at trial against him. In November 1998, the First State Bank in Overton, Texas was robbed at gunpoint and bank president Ronnie Ritch was kidnaped. He was found dead the next morning in a remote ditch, shot three times, including a shot to the back of the head. His tie was missing and a beer can was found next to his body. His car was found in a cemetery in Kilgore, Texas. About one month later, during an attempted robbery of Dusek's Auto Sales in Longview, Texas, a robber shot employee Robert Ely in the chest. His wallet was missing when he was found.

Following an unrelated bank robbery, Charles Stephens was apprehended by police.[7] Officers found Ely's missing wallet on Stephens, and found a .38 caliber revolver in his car. Ballistics tests showed that the revolver was the same one used to kill Ritch and Ely. At around the same time, Tatum began telling fellow inmates about his role in the murders of Ritch and Ely. Tatum told Lamonte Bond that he went with "Chuck" to a car dealership in Longview, where Chuck shot someone and didn't get any money out of the deal. Tatum also told Bond about attempting to rob a bank in Overton. He said that they waited behind the bank, grabbed a man

---

[7] Stephens died before he could be charged.

coming out, and tried to have him open the bank's safe, but it was on a time lock until morning. Tatum said that they drove the man around, took him to a cemetery, and then Chuck killed him.

Sedrick Murry, a long-time friend of Tatum and Stephens, also testified at trial under a grant of immunity. Murry testified that Stephens tried to recruit him and Tatum to participate in the Overton bank robbery, but Murry refused. Murry stated that after the robbery Tatum told him that they had grabbed a man coming out of the bank and asked him to open the vault, which he was unable to do. They then took him out in the woods, and Stephens shot him in the head. Tatum also told Murry about the car lot robbery. He said that Stephens pretended to be looking for a car, entered the office, asked for money, and when the man refused, Stephens shot him in the chest. Murry identified the .38 revolver as Tatum's and a semiautomatic weapon as Stephen's.

John Walsh was also incarcerated with Tatum. Tatum asked Walsh how to escape the death sentence on a capital murder charge, and told him about the kidnaping and murder of Ritch and the robbery and murder of Ely. Walsh contacted the FBI, and an agent told him not to question Tatum but to listen and report anything Tatum said about the crimes. Later, Tatum told Walsh how he and Stephens waited behind the bank and pulled a gun on Ritch when he came out. Tatum said that the vault was on a timer and could not be opened, and that Ritch was unable to get money for them from the night deposit. Ritch tried and failed to escape, but when Stephens

5

attempted to shoot him his gun did not fire. Walsh said that Ritch promised them money in the morning when the vault could be opened but asked to leave a message for his deaf wife, but that Tatum blindfolded Ritch with his tie and he and Stephens drove Ritch out into the country. According to Walsh, Tatum said that Stephens got Ritch out of the car, shot him, and left his body in a ditch. Tatum also told Walsh about the car lot robbery, stating that Stephens asked to use the phone and the restroom before pulling a gun and asking for money. When Ely said that there was no money, Stephens shot Ely and Tatum took Ely's wallet. Tatum told Walsh that he burned all the clothes he wore that day, except for his shoes, in the trash pile behind his grandparents' house. Walsh agreed to record his next conversation with Tatum, and Tatum once again discussed the crimes with Walsh. Although Walsh knew where the microphones were located, they did not function properly and the conversation was only partially recorded. The entire conversation was videotaped, and Tatum is seen drawing a diagram of the Overton bank as he reenacted the crime to Walsh.

Agents went to Tatum's home, and searched the burn pile in his yard with his mother's consent. They found keys that matched those missing from Ritch. They also interviewed Tatum, showing him the diagram he drew and telling him that others had revealed his admissions about the crimes. In the videotaped interview, Ritch denied any involvement in the murders but mentioned putting a tie around Ritch's face, a fact about the crime that was not public at

the time. Other evidence was uncovered linking Tatum to the crimes, including DNA from Ritch that was found on a pair of Stephens' jeans, fingerprints from both Stephens and Tatum on a blue plastic bag found at the scene of Ely's murder, and fibers on Ritch's clothing that were consistent with the carpet in Stephens' car.

Tatum claims that there is no physical evidence linking him to the murder of Ritch, aside from the set of Ritch's keys recovered from a burn pile located behind his house. There is evidence of Tatum's participation. Sedrick Murry, a friend of Tatum, identified the murder weapon as Tatum's gun. Murry and two other witnesses each testified that Tatum had admitted involvement in the attempted bank robbery and murder of Ritch. One of these other witnesses, fellow inmate John Walsh, testified that Tatum drew a diagram of the bank and acted out what happened. This meeting was videotaped, and portions of the videotape were played in the trial, as Walsh testified. Tatum also mentioned to the case agent that Ritch's necktie was tied around his face, a detail of the crime that was not known to the public at the time.

III

- 1 -

Tatum also argues that there is insufficient evidence to sustain the verdict on Count 2. We are not persuaded. To the contrary, the evidence implicating Tatum in this crime is compelling.

Tatum's fingerprints were found on a plastic bag at the murder

scene that was spattered with Ely's blood, and the murder weapon was identified as his gun. Three witnesses also testified that he confessed to them, and the angle of Ely's gunshot wound matched the story recounted by these witnesses. In his videotaped conversation with Walsh, Tatum wrote the number 80 on a diagram that corresponded to the location of Dusek's Auto Sales on Highway 80. Moreover, Ely's wallet and credit cards were found in Stephens' possession, and evidence placed Tatum with Stephens on the night of the murder. There was sufficient evidence to support the jury's verdict.

- 2 -

Tatum also urges that 18 U.S.C. § 1111 requires the government to prove that the killing in Count 2 occurred within "the special maritime and territorial jurisdiction of the United States."[8] He mistakenly reads Section 1111(b) to mandate that death or life imprisonment can *only* be imposed when a murder occurs within the special maritime and territorial jurisdiction of the United States.[9] Section 1111(b) merely provides minimum sentences for murders that occur within the special maritime and territorial jurisdiction of the United States, and these minimum sentences are not part of the definition of murder found in 18 U.S.C. § 1111(a).

---

[8] 18 U.S.C. § 1111(b).

[9] Appellant's Br. at 18.

8

Tatum's argument is frivolous and requires no further analysis.[10]

Tatum also claims that his theory of "special maritime and territorial jurisdiction" should have been presented to the jury, thereby challenging the jury instructions given by the district court. This court reviews challenges to jury instructions for abuse of discretion.[11] Because of the broad discretion afforded district courts in framing the instructions to the jury, we will find an abuse of discretion only if the charge as a whole is not a correct statement of the law and does not clearly instruct the jurors regarding the legal principles applicable to the factual issues before them.[12] Tatum's argument is without merit and is based upon a misreading of 18 U.S.C. § 1111. The district court did not abuse its discretion.

- 3 -

Tatum also challenges his conviction for carrying a firearm during and in relation to a crime of violence charged in Count 2, arguing that the Hobbs Act robbery charged as the predicate crime of violence was not sufficiently connected to interstate commerce and thus did not "obstruct, delay, and affect and attempt to obstruct, delay, and affect commerce" in violation of the Hobbs

---

[10] The Fourth Circuit has also considered this argument and reached a similar conclusion. *United States v. Young*, 248 F.3d 260, 274-75 (4th Cir. 2001).

[11] *Cozzo v. Tangipahoa Parish Council-President Gov't*, 262 F.3d 501, 520 (5th Cir. 2001).

[12] *Id.*

Act.[13] We review constitutional challenges *de novo*.[14]

Tatum asserts that his taking of Ely's wallet did not have a direct effect on interstate commerce, and argues that *United States v. Lopez*[15] requires the government to show that the robbery had a substantial effect on interstate commerce to justify the application of the Hobbs Act. This court has rejected this argument, holding that the government must merely demonstrate that the actions have a *de minimus* nexus to interstate commerce if they are of a type that, repeated many times over, would have a "substantial effect" on interstate commerce.[16]

The jury was instructed that it did not have to find a substantial effect upon interstate commerce in order to return a guilty verdict for Count 2. The trial judge told the jury that as long as the crime had "any effect at all on interstate commerce," the commerce element of the Hobbs Act was satisfied. Tatum challenges this jury instruction. As stated, this court reviews challenges to jury instructions for abuse of discretion.[17]

The district court did not abuse its discretion by instructing

---

[13] 18 U.S.C. § 1951.

[14] *United States v. Jennings*, 195 F.3d 795, 800 (5th Cir. 1999).

[15] 514 U.S. 549 (1995).

[16] *See, e.g., Jennings*, 195 F.3d at 800; *United States v. Robinson*, 119 F.3d 1205, 1208 (5th Cir. 1997).

[17] *Cozzo*, 262 F.3d at 520.

10

the jury that the effect of the robbery on interstate commerce must only be minimal. That instruction is correct, given that this Court held in *Robinson* that robberies can be aggregated under the Hobbs Act to satisfy the constitutional demand of a substantial effect on commerce.[18] Even the minimal impact upon interstate commerce of a single crime is sufficient for Hobbs Act purposes under the law of this Circuit, and Tatum's challenge fails.

IV

Tatum next claims that Count 2 is duplicitous because it joins two distinct offenses—the robbery of Ely and the attempted robbery of Dusek's Auto Sales—in a single count. Count 2 charges Tatum with a violation of 18 U.S.C. § 924(j), a firearms murder during or in relation to a violent crime. The two "distinct offenses" are in fact predicate offenses for the Section 924(j) offense. We assess the indictment to determine whether it can be read to charge only one violation in each count.[19]

In this case, there is only one crime—a firearms murder during or in relation to a violent crime. The violent crime that serves as the predicate offense is a single, continuing scheme: an attempt to rob Dusek's Auto Sales. The robbery of Ely was part and parcel of this scheme. There is no duplicity.

---

[18] *Robinson*, 119 F.3d at 1214; *see United States v. Hickman*, 179 F.3d 230, 231 (5th Cir. 1999) (en banc).

[19] *United States v. Sharpe*, 193 F.3d 852, 866 (5th Cir. 1999).

11

Tatum also argues that the jury should have been permitted to choose between robbery and attempted robbery in Count 2. This argument is similarly without merit, and the district court did not abuse its discretion.

V

- 1 -

Tatum further claims that the district court erred by denying his motion for mistrial based upon the admission of out-of-court statements made by a deceased co-defendant (Stephens). The district court admitted them as statements made in furtherance of a conspiracy and statements against interest. We review the district court's denial of a motion for mistrial for an abuse of discretion.[20]

The statements that Tatum sought to exclude were made by Stephens to Murry, asking him to be their driver in the bank robbery and relating details about the robbery to him. Stephens showed Murry the bank and discussed a possible escape route, showed Murry a fake dollar bill that had belonged to Ritch, and stated that he had a blood spot on his pants. Stephens also told Murry about the car lot robbery, and identified their weapons to him.

The district court found that several of Stephens' statements were admissible as statements made in furtherance of his conspiracy with Tatum, under Rule 801(d)(2)(e). Under Rule 801(d)(2)(e), the

---

[20] *United States v. Wyly*, 193 F.3d 289, 298 (5th Cir. 1999).

12

proponent of a statement must prove by a preponderance of the evidence (1) the existence of the conspiracy, (2) the statement was made by a co-conspirator of the party, (3) the statement was made during the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy.[21]

Tatum admits that some statements made by Stephens to Murry were made in furtherance of the conspiracy, and that other statements made by Stephens were admissible as statements against interest under Rule 804(b)(3). He merely argues that Stephens' statements that do not fit either of these exceptions were inadmissable. That statement is indeed true, but Tatum fails to provide any specific statements that were not in furtherance of the conspiracy or against Stephens' interest. The only specific statement challenged by defense counsel at trial was Stephens' identification of Tatum's weapon, but this error is harmless given that Tatum acknowledged the same information. The district court did not abuse its discretion.

- 2 -

Additionally, Tatum claims that the district court erred by denying his motion to suppress evidence found during a search of his automobile and the burn pile behind his house. We review the district court's findings of fact supporting the denial of a motion to suppress under a clearly erroneous standard and review the

_____

[21] *United States v. Cornett*, 195 F.3d 776, 782 (5th Cir. 1999).

13

district court's conclusions of law *de novo*.[22]

Although the Fourth Amendment prohibits the warrantless entry of a person's home, the prohibition does not apply to situations in which voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises.[23] The police obtained permission to search the premises from Tatum's mother, with whom Appellant lived. Although Tatum claims that his mother was under duress when she consented to the search, he provided no evidence to support this claim. Tatum admits that his mother signed a form that consented to the search, and the mother's authority to consent is undisputed.[24] Tatum also challenges the search warrant that was issued for his automobile, as well as the officers' good faith reliance upon a facially valid warrant. We review these challenges *de novo*, and conclude that Tatum's arguments are without merit.

- 3 -

Tatum also challenges the voluntariness of his confession to Walsh. A confession is voluntary if it is the product of the defendant's free and rational choice. It is voluntary in the absence of official overreaching, either by direct coercion or

---

[22] *United States v. Singh*, 261 F.3d 530, 535 (5th Cir 2001).

[23] *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).

[24] *United States v. Matlock*, 415 U.S. 164, 171 (1974).

14

subtle psychological persuasion.[25] Whether a confession is voluntary is determined by considering the totality of the circumstances.[26] In reviewing a ruling on a motion to suppress a confession, we give credence to the credibility choices and fact finding by the district court unless they are clearly erroneous. The ultimate issue of voluntariness is a legal question reviewed *de novo*.[27]

Tatum initiated the conversation with Walsh, and Walsh was instructed by officers not to question Tatum about the crimes or solicit any further information. Tatum was not coerced to continue his conversations with Walsh, which he could have ended at any time. Tatum has presented no evidence to suggest that his confession was involuntary.

Tatum also claims that Walsh could not speak with him until Tatum received *Miranda* warnings and waived his rights. This argument is foreclosed by the Supreme Court's decision in *Illinois v. Perkins*.[28] Tatum's argument that Walsh was recruited as a government agent is also without merit. Walsh approached the officers after Tatum began speaking to him. Similarly, Tatum's Sixth Amendment right to counsel was not improperly interfered with. The Sixth Amendment right to counsel attaches only to charged

---

[25] *United States v. Mullin*, 178 F.3d 334, 342 (5th Cir. 1999).

[26] *Id.*

[27] *Id.*

[28] 496 U.S. 292, 296 (1990).

offenses and does not attach until a prosecution is commenced.[29]

Tatum's final argument, that the district court abused its discretion by denying his motion to admit testimony establishing that a government witness was deceptive on a FBI polygraph examination, is also without merit.

VI

For the foregoing reasons, we AFFIRM Tatum's convictions.

---

[29] *Texas v. Cobb*, 532 U.S. 162 (2001).